

FILED by _GME_ D.C.
INTAKE

OCT 0 6 2009

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. OF FLA. MIAMI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### MIAMI DIVISION

Case No. **09-10095**

JOHN DOLAN-HEITLINGER,

     Plaintiff,

vs.

## CIV-MOORE

NATIONAL CREDIT UNION
ADMINISTRATION BOARD, as
Conservator for Keys Federal
Credit Union,

     Defendant.

## MAGISTRATE JUDGE SIMONTON

_____/

## NOTICE OF REMOVAL OF CIVIL ACTION

Pursuant to 28 U.S.C. §§ 1441 and 1446 and 12 U.S.C. § 1789(a)(2), Defendant, National Credit Union Administration Board ("NCUA"), as Conservator for Keys Federal Credit Union ("KFCU"), gives Notice of Removal of this action from the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County, Florida, to the United States District Court for the Southern District of Florida, and states:

    1.    On February 11, 2008, Plaintiff filed in the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County, Florida, this action against KFCU for damages arising from an employment agreement. A copy of the state court file is attached as Composite Exhibit 1.

    2.    On September 24, 2009, pursuant to its authority under Section 206(h)(1)(B) of the Federal Credit Union Act, 12 U.S.C. § 1786(h)(1)(B), the NCUA issued an order placing KFCU into voluntary conservatorship and appointing itself Conservator. A copy of the Consent

Order of Conservatorship, in *In the Matter of the Conservatorship of Keys Federal Credit Union, Charter No. 01435,* NCUA Docket No. 09-0045-CO, is attached as Exhibit 2.

3.    The NCUA is an independent agency within the Executive Branch of the United States Government whose primary mission is to regulate, insure, and charter credit unions pursuant to its authority under the Federal Credit Union Act, 12 U.S.C. § 1751 *et seq.* ("FCUA"). The NCUA is managed by a three-member board appointed by the President.

4.    As conservator for KFCU, NCUA has all the powers of the members, directors, officers, and committees of KFCU and can operate the credit union and conserve its assets.  12 U.S.C. § 1786(h)(8).

5.    Pursuant to 28 U.S.C. § 1446(b), this action first became removable on September 24, 2009 when the NCUA was appointed as Conservator for KFCU.

## JURISDICTION AND VENUE ARE APPROPRIATE

6.    Subject-matter jurisdiction is conferred on this Court by 28 U.S.C. § 1331 and 12 U.S.C. § 1789(a)(2).

7.    Venue in this district is proper pursuant to 28 U.S.C. § 1391(e)(1) in that a substantial part of the events or omissions giving rise to the claim occurred in the Southern District of Florida.

8.    Removal is permissible and appropriate pursuant to 12 U.S.C. § 1789(a)(2), which provides in part as follows:

> All suits of a civil nature at common law or in equity to which the Board shall be a party shall be deemed to arise under the laws of the United States, and the United States district court shall have original jurisdiction thereof, without regard to the amount in controversy. The Board may, without bond or security, remove any such action, suit, or proceeding from a State court to the United States district court for the district or division embracing the place where the same is pending by following any procedure for removal now or hereafter in effect....

2

9.      Under 12 U.S.C. § 1789(a)(2), NCUA is not required to file a bond for removal.

10.     As required by 28 U.S.C. § 1446(d), a Notice of Filing Notice of Removal is being filed in the state court action.

WHEREFORE, Defendant, National Credit Union Administration Board, as Conservator for Keys Federal Credit Union, requests that this matter be removed from the Circuit Court of the Sixteenth Judicial Circuit in and for Monroe County, Florida, to the United States District Court for the Southern District of Florida, that all proceedings hereinafter take place in this Court, and that the Court grant such other relief as it deems just and proper.

Alan Rosenthal
Florida Bar No. 220833
E-Mail:  arosenthal@carltonfields.com
Natalie J. Carlos
Florida Bar No. 0146269
E-Mail:  ncarlos@carltonfields.com
Carlton Fields, P.A.
Attorneys for Defendants
4000 International Place
100 S.E. Second Street
Miami, Florida 33131
Telephone:     305-530-0500
Facsimile:     305-530-0055

3

## CERTIFICATE OF SERVICE

I CERTIFY that a true and correct copy of this Notice of Removal of Civil Action was served by overnight delivery on October 6, 2009 to Robert E. Weisberg, Esquire, Law Offices of Robert E. Weisberg, 1450 Madruga Avenue, Suite 302, Coral Gables Florida; and Jose F. Torres, Esquire, Law Offices of Campbell & Malafy, 2655 LeJeune Road, Suite 201, Coral Gables, Florida 33134, Attorneys for Plaintiff, John Dolan-Heitlinger.

## PLEADINGS

| TAB | DATE | DESCRIPTION |
|---|---|---|
| 1. | 02/11/08 | Complaint and Demand for Jury Trial |
| 2. | 02/15/08 | Notice of Appearance on Behalf of Defendant |
| 3. | 02/18/08 | Summons on KEYS FEDERAL CREDIT UNION |
| 4 | 02/25/08 | Scheduling Order |
| 5. | 03/03/08 | Answer and Affirmative Defenses of Defendant, Keys Federal |
| 6. | 05/15/08 | Notice of Receipt of Materials from Third Party and Motion for Court Order Setting Forth Procedure for Examination of the Materials |
| 7. | 05/21/08 | Defendant's Motion for Sanctions, Motion to Strike Plaintiff's Pleadings for Misconduct and Bad Faith , and Motion to Compel Return of Unlawfully Obtained Documents |
| 8. | 07/29/08 | Plaintiff's Motion to Strike or Overrule Defendant's First and Fourth General Objections to Plaintiff's Requests for Productions (First, Second , and Third Sets) |
| 9. | 08/28/08 | Order of Disqualification (Judge David J. Audlin, Jr.) |
| 10. | 9/11/08 | Assignment - Judge Mark H. Jones |
| 11. | 09/11/08 | Amended Disorder of Disqualification – (Judge David J. Audlin, Jr.) |
| 12. | 09/10/08 | Motion for Protective Order |
| 13. | 09/15/08 | Certificate of Disqualification (Judge Mark H. Jones) |
| 14. | 09/17/08 | Assignment – Judge Luis M. Garcia |
| 15. | 10/1/08 | Notice of Case Management Conference |
| 16. | 12/09/08 | Order of Recusal – Judge Luis M. Garcia |
| 17. | 12/22/08 | Notice of Case Management Conference |
| 18. | 12/30/08 | Amended Notice of Case Management Conference ( 2 hours) |
| 19. | 02/12/09 | Defendant's verified Motion to Disqualify Judge Wayne Miller |
| 20. | 02/17/09 | Order Granting Defendant's Verified Motion to Disqualify Judge Wayne Miller |
| 21. | 02/24/09 | Assignment – Judge William R. Ptomey Jr. |
| 22. | 06/10/09 | Stipulation for Substitution of Counsel |
| 23. | 07/29/09 | Order on Plaintiff's Motion for Protective Order |
| 24. | 07/29/09 | Order on Plaintiff's Motion to Strike or Overrule Defendant's First and Fourth General Objections to Plaintiff's Requests for Production (First, Second and Third Sets), etc. |
| 25. | 09/15/09 | Plaintiff's Motion to Compel Defendant to Comply with Sections B and D of the Court's Order of July 29, 2009 and for Attorneys' Fees and Costs |
| 26. | 09/30/09 | Defendant's Unopposed Motion of National Credit Union Administration Board, as Conservator for Keys Federal Credit Union, for Substitution of Defendant |
| 27. | 10/05/09 | Order  Granting Motion of National Credit Union Administration Board, as Conservator for Keys Federal Credit Union, for Substitution of Defendant |

# 1

**EXHIBIT**

tabbies®

IN THE CIRCUIT COURT OF THE
SIXTEENTH JUDICIAL CIRCUIT,
IN AND FOR MONROE COUNTY,
FLORIDA

JOHN DOLAN-HEITLINGER,

    Plaintiff.

CASE NO. 2008-CA-225-K

v.

KEYS FEDERAL CREDIT UNION,

    Defendant.

_____/

### COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, JOHN DOLAN-HEITLINGER, by and through
undersigned counsel, sues the Defendant, KEYS FEDERAL CREDIT
UNION, for damages in excess of seven hundred thousand
dollars ($700,000.00) for breaches of contract, and states:

### FACTS

1.    Plaintiff, JOHN DOLAN-HEITLINGER (``DOLAN-HEITLINGER'')
is, and, at all times relevant to this Complaint, was a
resident of Monroe County, Florida.

2.    Defendant, KEYS FEDERAL CREDIT UNION (``KFCU''), is,
and at all times relevant to this Complaint, was a federally
chartered credit union, limited by charter to doing business
in the State of Florida. KFCU's principal offices are in Key
West, Monroe County, Florida. KFCU provides a broad range of
financial services including mortgages and home equity
loans, to the residents of the Florida Keys.

3.    The contracts on which Plaintiff's breach of contract claims are based were entered into in Key West, Monroe County, Florida.

4.    All conditions precedent to the filing of this lawsuit have been satisfied or have been waived.

5.    KFCU is governed through a Board of Directors, which elects one of its members to serve as Chairperson.  In 2007, and at the time of the breaches of contract alleged herein, the KFCU Board of Directors consisted of Paul Mitchell, Chairperson, Steve Henson, Mark Hyatt, Tommy Taylor, Cris Waite-Morgan, Andy Griffiths, Jr., and Bob Watson.  A President and Chief Executive Officer heads an Executive Staff comprised of the Chief Executive Officer, a Chief Operating Officer, a Vice President of Lending, and a Chief Financial Officer. The Chief Executive Officer reports to the Board of Directors.

6.    DOLAN-HEITLINGER joined KFCU as President and Chief Executive Officer (``CEO'') in 1991 and served in that capacity pursuant to a series of yearly employment agreements with KFCU until November 9, 2007.

7.    During his tenure as President and CEO of KFCU, DOLAN-HEITLINGER performed all his duties and carried out his job responsibilities in an exemplary manner. He was a driving force behind many positive changes at the credit union. In 1993, under DOLAN-HEITLINGER's leadership as CEO, KFCU expanded its charter to offer membership to all residents who live or work in the Florida Keys, became the first local

2

financial institution to offer full service online banking, and opened several new branches to provide better services to residents of the Lower Keys. During DOLAN-HEITLINGER's tenure as CEO of KFCU, the credit union's assets grew from 82 million dollars in 1991 to more than 212 million dollars in mid-2007.

8.    DOLAN-HEITLINGER recognized the importance of the affordable housing crisis in the Florida Keys and its direct bearing on the credit union's mission. DOLAN-HEITLINGER and other business and community leaders joined to work toward creating affordable housing for working people in the Florida Keys.

9.    In 2005, DOLAN-HEITLINGER was appointed to the Monroe County Housing Authority Board by Governor Bush. That same year DOLAN-HEITLINGER was also appointed to the Monroe County Land Authority Advisory Committee by County Commissioner Dixie Spehar. DOLAN-HEITLINGER served on the Monroe County Workforce Advisory Committee and the Chamber of Commerce Workforce Housing Committee.

10.   On April 21, 2007, on the occasion of DOLAN-HEITLINGER's fifteenth anniversary with KFCU, the KFCU Board of Directors publicly acknowledged and honored DOLAN-HEITLINGER's commitment to the cause of affordable housing by sponsoring and participating in a Habitat for Humanity special event.

11.   On or about, September 1, 2007, KFCU renewed its contract of employment with DOLAN-HEITLINGER, extending his

employment as President and CEO for the period of September 1, 2007 to August 31, 2008. A copy of the September 1, 2007 employment contract, titled ``President's Employment Agreement,'' hereinafter referred to as the ``Employment Agreement'' and attached hereto as ``Exhibit A,'' provides that KFCU pay DOLAN-HEITLINGER a base salary of $207,316.00, certain bonus incentives, and other benefits during the contract period.

12.   The Employment Agreement provides that the credit union could terminate the contract prior to its expiration ``for cause'' as defined in the contract.   The Employment Agreement defines ``for cause'' as follows:

> 1.   FOR CAUSE.  Credit Union may terminate this Agreement for cause.  Cause shall consist of acts of dishonesty, insubordination, disloyalty, termination or restriction of bond eligibility, bankruptcy, willful breach of express contract terms, illegal acts, self-dealing or transactions involving conflict of interest, gross incompetence, gross negligence or general misconduct.  In the event this Agreement is terminated for cause, Credit Union may elect to terminate Executive's duties immediately and without notice. In case of termination under this paragraph, Executive shall be entitled to all compensation earned to date, but nothing more. Under such circumstances, payment for accrued vacation leave shall not exceed Twenty (20) compensable days.

Employment Agreement (Exhibit ``A''), ¶10.

13.   The Employment Agreement allows KFCU to terminate DOLAN-HEITLINGER's employment without cause but requires that if KFCU were to terminate DOLAN-HEITLINGER without cause, it would have to give DOLAN-HEITLINGER 180 days' written notice of its intent to terminate him or, in the absence of notice,

pay DOLAN-HEITLINGER a sum equivalent to what DOLAN-HEITLINGER's earnings and accrued benefits would have been had DOLAN-HEITLINGER worked through the 180 day notice period. Employment Agreement (Exhibit ``A''), ¶10.

14. In recognition of DOLAN-HEITLINGER's responsibility for KFCU's success and the value of his skills and services to the credit union and to the ability of the credit union to adequately serve the community, in 2004, KFCU entered into an agreement with DOLAN-HEITLINGER providing certain deferred compensation to DOLAN-HEITLINGER. A copy of the agreement, titled ``KEYS FEDERAL CREDIT UNION § 457(f) DEFERRED COMPENSATION PLAN'' (hereinafter ``Deferred Compensation Plan'') is attached to this Complaint as ``Exhibit B.''

15. Pursuant to the Deferred Compensation Plan, starting in 2004, and every year thereafter through the year 2014, KFCU was to make a Base Contribution to the Plan for DOLAN-HEITLINGER's benefit. KFCU also agreed to make an annual Incentive Contribution to the Plan for DOLAN-HEITLINGER's benefit contingent on KFCU's continued growth under DOLAN-HEITLINGER's management. *See* Deferred Compensation Plan, ¶¶ 1.1.1 through 1.1.2.3.

16. Pursuant to the terms of the Deferred Compensation Plan, DOLAN-HEITLINGER has a right to receive the accrued Plan Benefit provided that he is terminated by KFCU for reason other than ``for cause.''

Deferred Compensation Plan (Exhibit ``B''), ¶2.1 and 2.2.

17.    For purposes of the Deferred Compensation Plan, ``for cause'' is defined as set forth in paragraph 10 of the Employment Agreement. Deferred Compensation Plan, ¶2.2.1.

18.    DOLAN-HEITLINGER performed all his obligations under the Employment Agreement and the Deferred Compensation Plan.

19.    Although KFCU has not provided DOLAN-HEITLINGER with a current updated accounting of the funds accumulated in the Deferred Compensation Plan, DOLAN-HEITLINGER estimates that as of November, 2007, he had earned Base Contributions and Incentive Contributions totaling in excess of $600,000.00.

20.    Paul Mitchell, Chairman of the Board of KFCU, cancelled the regularly scheduled KFCU board meeting of October 24, 2007 and rescheduled the meeting for the evening of October 25, 2007.    DOLAN-HEITLINGER, who was scheduled to be present at the October 24, 2007 Board of Directors meeting was excluded from the meeting of October 25th.

21.    Mitchell and Board Member Robert Watson met DOLAN-HEITLINGER in the KFCU parking lot at approximately 8:15 a.m. on October 26, 2007. At that time and place, Mitchell handed DOLAN-HEITLINGER a Notice of Administrative Leave.

22.    Mitchell asked DOLAN-HEITLINGER to sign the Notice immediately, surrender his KFCU cellphone, and to immediately leave the KFCU property.

23.    As part of an administrative investigation which included the interviews of various KFCU employees, Attorney Michael D. Lozoff, of the law firm of Adorno & Yoss in

Miami, Florida, summoned DOLAN-HEITLINGER to Coral Gables, Florida on October 31, 2007, and there interviewed DOLAN-HEITLINGER regarding KFCU affairs. An assistant to Mr. Lozoff was present at the meeting and took notes. Lozoff assured DOLAN-HEITLINGER that he would have the opportunity to review the notes for accuracy and suggest corrections. However, DOLAN-HEITLINGER was not provided a copy of the notes after the meeting, was not permitted to review the same for accuracy, or to suggest corrections to the record.

24. On Wednesday, November 7, 2007, Lozoff informed DOLAN-HEITLINGER over the telephone that if he did not tender a resignation to KFCU by Friday, November 9, 2007, he would be terminated.

25. During that telephone call, Mr. Lozoff represented to DOLAN-HEITLINGER that the Board of Directors had made the decision to terminate him ``for cause.''

26. KFCU terminated DOLAN-HEITLINGER effective November 9, 2007.

27. DOLAN-HEITLINGER was not permitted to attend the KFCU Board of Directors meeting of October 25, 2007 or any other Board of Directors meeting where his termination was proposed or discussed.

28. At no time prior to the Board of Directors meeting of October 25, 2007, during the October 25th meeting, or during any other Board meeting during which DOLAN-HEITLINGER's termination was discussed and decided, was DOLAN-HEITLINGER permitted to address the KFCU Board directly regarding the

7

decision or any proposed decision to terminate his employment.

29. Neither the KFCU Board of Directors, nor the Chairman of the Board of KFCU, nor any individual KFCU director, nor any officer or employee of KFCU, has informed DOLAN-HEITLINGER of any conduct on the part of DOLAN-HEITLINGER alleged to constitute ``for cause'' conduct under the Employment Agreement.

30. During the course of his employment with KFCU, DOLAN-HEITLINGER did not engage in any conduct or activity such as that defined as ``for cause'' conduct under the Employment Agreement.

**COUNT I**
**BREACH OF CONTRACT**
**EMPLOYMENT AGREEMENT**

31. Plaintiff JOHN DOLAN-HEITLINGER reiterates and realleges the allegations contained in paragraphs 1 through 30 and further states:

32. Pursuant to the President's Employment Agreement of September 1, 2007 between Plaintiff JOHN DOLAN-HEITLINGER and Defendant Keys Federal Credit Union, a copy of which is attached hereto as ``Exhibit ``A,'' in the event of a termination of employment other than ``for cause,'' as particularly defined in the Agreement, DOLAN-HEITLINGER was to receive 180 days' notice prior to the termination or a severance sum equivalent to 180 days' compensation and accrued benefits.

8

33. KFCU's termination of DOLAN-HEITLINGER was not ``for cause'' as defined in the Employment Agreement.

34. KFCU breached DOLAN-HEITLINGER's Employment Agreement by failing to give DOLAN-HEITLINGER 180 days' notice before terminating him and by failing to pay DOLAN-HEITLINGER the severance payment indicated in the Agreement.

35. Defendant KFCU's breach of the Employment Agreement, as detailed herein, is a material breach of the subject contract.

36. As a direct and proximate result of Defendant KFCU's breach of the Employment Agreement, Plaintiff DOLAN-HEITLINGER has been damaged by not being paid a sum due him under the Employment Agreement in excess of $115,000.00 and has caused Plaintiff to retain undersigned counsel to represent him and agreed to pay reasonable fees and costs in this action.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages in excess of $115,000.00, interests and pre-judgment interests, attorneys' fees pursuant to Section 448.08 Florida Statutes, plus the costs of this action and for any and all further relief as to this Court appears just and proper.

**COUNT II**
**BREACH OF CONTRACT**
**DEFERRED COMPENSATION PLAN**

37. Plaintiff JOHN DOLAN-HEITLINGER reiterates and realleges the allegations contained in paragraphs 1 through 30 and further states:

38.  Pursuant to the Deferred Compensation Plan agreement between Plaintiff JOHN DOLAN-HEITLINGER and Defendant KEYS FEDERAL CREDIT UNION, a copy of which is attached hereto as Exhibit ``B,'' in the event that KFCU terminated DOLAN-HEITLINGER's employment before January 15, 2014, other than ``for cause,'' DOLAN-HEITLINGER is entitled to receive the Plan Benefit.

39.  KFCU's termination of DOLAN-HEITLINGER was not ``for cause'' as defined in the Deferred Compensation Plan Agreement.

40.  KFCU breached DOLAN-HEITLINGER's Deferred Compensation Plan agreement by refusing to pay the Plan Benefit to DOLAN-HEITLINGER.

41.  Defendant KFCU's breach of the Deferred Compensation Plan agreement, as detailed herein, is a material breach of the subject contract.

42.  As a direct and proximate result of Defendant KFCU's breach of the Deferred Compensation Plan Agreement, Plaintiff DOLAN-HEITLINGER has been damaged by not being paid a sum in excess of $600,000.00 as provided by the Deferred Compensation Plan Agreement and has caused Plaintiff to retain undersigned counsel to represent him and agreed to pay reasonable fees and costs in this action.

WHEREFORE, Plaintiff demands judgment against the Defendant for damages in excess of $600,000.00, interests and pre-judgment interests, attorneys' fees, plus the costs

of this action and for any and all further relief as to this Court appears just and proper.

Demand For Jury Trial

Plaintiff demands trial by jury on all issues so triable.

Dated: February __11__, 2008

Robert E. Weisberg, Esq.
Florida Bar No. 285676
LAW OFFICES OF ROBERT E. WEISBERG
1450 Madruga Avenue, Suite 302
Coral Gables, Florida 33146
reweisberg@aol.com
305- 666-6095
305-666-6296  [fax]

and

Jose F. Torres, Esq.
Florida Bar No. 148067
jftorres3121@mindspring.com
LAW OFFICES OF CAMPBELL & MALAFY
2655 LeJeune Road, Suite 201
Coral Gables, FL 33134
305-447-8580
305-476-8383 [fax]

**ATTORNEYS FOR PLAINTIFF**

# Exhibit "A"

## PRESIDENT'S EMPLOYMENT AGREEMENT

Employer:         Keys Federal Credit Union

Employee:         John Dolan-Heitlinger

Effective Date:   1 September 2007


Original Contract Prepared for Keys Federal Credit Union

By:     Michael D. Lozoff, Esq.
        2525 Ponce de Leon Blvd.
        Suite 400
        Miami, FL  33134
        (305) 858-5555

## EMPLOYMENT AGREEMENT

AGREEMENT, entered this 1st day of September, 2007 between the Board of Directors of KEYS FEDERAL CREDIT UNION ("Credit Union") with offices located at 553 Peary Court Road, Key West, Monroe County, Florida 33040 and JOHN DOLAN-HEITLINGER ("Executive").

WHEREAS, Credit Union wishes to employ Executive as its Chief Executive Officer with the designated title of "President"; and

WHEREAS, Executive desires to be so employed; and

WHEREAS, Credit Union and Executive desire, and have agreed, to set forth herein their entire agreement and understanding with respect to Executive's employment by Credit Union from and after the date hereof.

NOW, THEREFORE, in consideration of the foregoing and of the respective covenants and agreements of the parties herein contained, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Credit Union and Executive mutually agree as follows:

FIRST:  Employment.  Credit Union agrees to employ Executive as its Chief Executive Officer with the designated title of "President" and Executive accepts such employment subject to the terms and conditions of this Agreement.

SECOND:  Offices and Duties of Executive.  During the term of this Agreement and in accordance with its terms and conditions, Executive shall perform such services and act in such capacity as the Board of Directors, through its Chairperson, may from time to time direct. Executive acknowledges and agrees that his duties shall include those duties customarily performed by one holding the position of President and Chief Executive Officer in other similar credit unions.  Subject to all applicable federal and state laws and regulations, the charter and bylaws of Credit Union, and the policies and procedures adopted by the Board, as amended from time to time, Executive's duties shall include at least the following:

a.   The General Management of the Credit Union.

b.   The hiring, supervision and discharging of all employees, except that the Board of Directors reserves the authority to hire the Executive Vice President who shall then work under the supervision, and pursuant to the authority granted hereunder, of the President.

c.   The Supervision, recording and timely reporting of Credit Union's business affairs and financial condition.

d.   The implementation of all Board policies and objectives and the performance of all contractual obligations of Credit Union.

e.  The performance of any other duties prescribed from time to time by the Board of Directors.

THIRD:  **Term:**  The term of this Employment Agreement shall be one (1) year commencing on the 1st day of September, 2007 and expiring on the 31st day of August, 2008.

**Renewal:**  If this Agreement is not terminated as provided herein, and subject to the provisions of this paragraph, Executive shall be entitled to two one-year renewals of this Agreement under the same terms contained herein. Each renewal term shall occur automatically unless at least ninety (90) calendar days prior to the expiration of the preceding term Credit Union notifies Executive in writing of its intent not to renew this Agreement for the subsequent term. In implementation of this "notice of intent not to renew" provision, it is agreed that Executive shall have the duty to serve Credit Union, through the then Chairperson of its Board of Directors, with a written reminder of the Credit Union's renewal rights under this clause. Such reminder shall be delivered to the Chairperson of the Board of Directors no later than thirty (30) days in advance of the ninety (90) day period immediately preceding the expiration date of this Agreement. Executive's failure to timely serve said reminder in the manner provided herein shall be deemed as an absolute waiver by Executive of the right to automatic renewal under this paragraph. In that event, renewal shall be in the absolute discretion of Credit Union.

FOURTH:  **Best Efforts.**  Executive agrees that he will devote all of his professional time and energies to Credit Union and that he will at all times faithfully, industriously and to the best of his ability, experience and talents perform all of the duties required of him under the terms of this Agreement in accordance with the standards contained herein and to the reasonable satisfaction of Credit Union.

FIFTH:  **Compensation.**  Executive shall receive an annual salary of Two Hundred Seven Thousand Three Hundred and Sixteen Dollars and Zero Cents ($207,316.00), said salary to be payable in accordance with the customary payroll policies and practices of Credit Union in effect from time to time.

SIXTH:  **Bonus Incentives.**  Executive shall be entitled to such incentive bonuses as the Board of Directors, in its discretion, shall determine from time to time, based upon the Credit Union's consideration of the performance review in accordance with section Seventh below. Incentive bonuses shall be within the range of 0% to 25% of Executive's base pay at the time. Once a bonus is awarded, it shall be paid. Subject to the provisions of this paragraph, Executive acknowledges and agrees that the award, timing and level of any incentive bonus granted hereunder shall be in the sole discretion of Credit Union.

SEVENTH:  **Performance Review.**  Credit Union shall conduct an annual performance review for the purpose of determining suitability of continuing employment and for the purpose of considering the award of incentive bonuses during the term of this Agreement and any renewals hereof. Salary and benefits survey will be reviewed to insure that the Executive's compensation package is competitive and appropriate.

EIGHTH:  **Nondisclosure Of Confidential Information.**  Executive acknowledges that the business and financial affairs of the Credit Union and its members constitute confidential

information except insofar as said information may be legally required to be disclosed to regulators and other proper parties. Accordingly, Executive shall not, either during the term of this Agreement or at any time thereafter, impart to any person, corporation, organization or other entity not having legal right to said information, any confidential information which Executive acquires in the performance of Executive's duties under this Agreement, except as permitted by Credit Union or under compulsion of law.

NINTH:  Benefits.

    a.  LEAVE.  Executive shall be entitled to five (5) weeks paid leave per year.  This shall constitute twenty five (25) compensable days.

    b.  MEDICAL COVERAGE.  Credit Union shall pay one hundred (100%) percent of Executive's family coverage medical care insurance premiums and up to Two Thousand Five Hundred ($2,500.00) Dollars for Executive's annual physical and up to Two Thousand Five Hundred ($2,500.00) Dollars for Executive's spouse's annual physical.

    c.  LIFE INSURANCE.  Credit Union shall pay the premium for an additional Five Hundred Thousand ($500,000.00) Dollar term life insurance policy with proceeds payable to Executive's family or otherwise as Executive may elect.

    d.  RESERVE AFFILIATION CONTINGENCY.  Credit Union acknowledges that Executive is obligated under his military reserve commitment.  In accordance therewith, Executive shall be entitled to a maximum of Seventeen (17) days paid leave without being required to take annual leave time or unpaid days, in accordance with the guidelines used by the State of Florida pertaining to reserve military participation by State employees.

    e.  HOME COMPUTER.  Executive shall be entitled to use a Credit Union purchased personal computer at his residence.  Subject to continued employment with the Credit Union, ownership of the computer will transfer to the Executive after three (3) years' depreciation is achieved.  In the event that this computer becomes inadequate, Executive may propose the purchase of a new computer for his home use.  In addition, Credit Union will pay the cost of installing a high speed DSL line in Executive's home as well as reimbursing Executive for monthly fees associated therewith.

    f.  CONFERENCES.   Executive is expected to attend appropriate training and professional conferences each year.  With prior approval of the Board Chairperson, Credit Union shall reimburse Executive for costs associated with his spouse's travel.

    g.  OTHER BENEFITS.  Other benefits may be made available to Executive from time to time at the sole discretion of Credit Union.

TENTH:  Termination.  This Employment Contract may be terminated prior to its expiration under the following circumstances:

    a.  By Credit Union For Cause Or No Cause.

1. FOR CAUSE. Credit Union may terminate this Agreement for cause. Cause shall consist of acts of dishonesty, insubordination, disloyalty, termination or restriction of bond eligibility, bankruptcy, willful breach of express contract terms, illegal acts, self-dealing or transactions involving conflict of interest, gross incompetence, gross negligence or general misconduct. In the event this Agreement is terminated for cause, Credit Union may elect to terminate Executive's duties immediately and without notice. In case of termination under this paragraph, Executive shall be entitled to all compensation earned to date, but nothing more. Under such circumstances, payment for accrued vacation leave shall not exceed Twenty (20) compensable days.

2. FOR NO CAUSE. Credit Union may elect to terminate this Agreement during any term for no cause. In the event Credit Union so determines to terminate this Agreement without cause, and no basis for cause exists under Paragraph 1 above of this section, Credit Union may elect, in its discretion, to provide Executive with written notice of its intent to terminate at least One Hundred Eighty (180) days in advance of the intended termination date or, alternatively, to terminate this Agreement and Executive's duties immediately and without notice by informing Executive of said election and paying to Executive a sum equivalent to what Executive's earnings and accrued benefits would have been had Executive worked through the One Hundred Eighty (180) day notice period. May be modified by mutual consent.

3. BY EXECUTIVE. Executive may elect to terminate this Agreement during any term by providing to Credit Union, through the Chairperson of its Board of Directors, One Hundred Twenty (120) days advance notice. In the event Executive terminates this Agreement under this paragraph, Credit Union shall be entitled to the same election as is set forth in Paragraph 1 of this section pertaining to termination for cause. May be modified by mutual consent.

4. BY MUTUAL CONSENT. This Agreement may be terminated at any time by mutual written consent under terms negotiated by the parties at the time.

ELEVENTH: **Modification.** No waiver or modification of this Agreement or of any portion hereof shall be valid unless in writing and duly executed by both parties hereto.

TWELFTH: **Entire Agreement.** This Agreement contains all of the terms agreed upon by the parties with respect to the subject matter of this Agreement and supersedes all prior agreements, arrangements and communications between the parties concerning such subject matter whether oral or written.

THIRTEENTH: **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be considered an original for all purposes, and all of which taken together shall be considered one and the same instrument.

FOURTEENTH: **Severability.** If any one or more of the provisions of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality or enforceability of the remaining provisions of this Agreement shall not be affected thereby. To the extent permitted by applicable

law, each party waives any provision of law which renders any provision of this Agreement invalid, illegal or unenforceable in any respect, it being the intent of the parties that this Agreement and each of the provisions hereof shall be enforceable to the fullest extent permitted by law.

FIFTEENTH: Notice. Any notice or other communication required or permitted hereunder shall be in writing and shall be personally delivered or mailed by registered or certified mail, postage prepaid, to the respective parties hereto as follows:

(a) If to Credit Union:
   Chairperson of the Board of Directors
   KEYS FEDERAL CREDIT UNION
   553 Peary Court Road, Key West,
   Monroe County, Florida 33040

(b) If to Executive:
   John Dolan-Heitlinger
   21 Azalea Drive
   Key West, FL 33040

SIXTEENTH: Benefit and Binding Effect. This Agreement shall inure to the benefit of and be enforceable by, and shall be binding upon and against, the parties hereto and their executors, heirs, legal representatives, successors and assigns, provided that neither this Agreement nor any right hereunder or interest herein may be assigned by either party hereto. The obligations of Credit Union hereunder run personally to the Executive and shall be continued only so long as the Executive shall be personally discharging his duties hereunder.

SEVENTEENTH: Section Headings. Section headings and numbers have been inserted for convenience of reference only and shall not affect the meaning or interpretation of any provision hereof. In the event of any ambiguity or conflict between section headings or numbers and the text of this Agreement, the text shall control.

EIGHTEENTH: Governing Law and Waiver of Objection to Forum. This Agreement shall be governed by, and construed and interpreted in accordance with, the laws of the State of Florida applicable to contracts executed and to be wholly performed in that State. Furthermore, the parties expressly waive any objections, whether to venue or jurisdiction, to suit being brought in Monroe County, Florida or Dade County, Florida for enforcement, interpretation or construction of this Agreement and the rights and obligations arising hereunder.

IN WITNESS WHEREOF, the parties have executed this Agreement as of the date first set forth above.

KEYS FEDERAL CREDIT UNION

_____  By:_____
Witness                       Paul Mitchell
Bethany Watts, Exec. Assistant  Chairperson of the Board

_____  By:_____
Witness                       John Dolan-Heitlinger
Todd German, HR Specialist    President & CEO

# Exhibit "B"

## KEYS FEDERAL CREDIT UNION
## § 457(f) DEFERRED COMPENSATION PLAN

PARTIES:     Keys Federal Credit Union,                    ("Employer")
             a federally chartered credit union
             PO Box 1898
             Key West FL 33041

             John Dolan-Heitlinger                         ("Employee")

EFFECTIVE DATE:   December 1, 2004

### RECITALS

A.     Employer is a nonprofit corporation and exempt from federal income tax under Section 501(c)(1)(A) of the Internal Revenue Code of 1986, as amended ("IRC").

B.     Employee is currently employed as Chief Executive Officer ("CEO") of Employer pursuant to that certain Employment Agreement dated September 1, 2003.

C.     Employee, as CEO of Employer, is responsible for the success of Employer and his skills and services are important for the future success of Employer. It is the consensus of the Board of Directors of Employer (the "Board") that Employee's services have been of exceptional merit, and that the loss of Employee's services would have a negative impact on the Employer's ability to adequately serve the community.

D.     Employer wishes to provide additional incentives to Employee to remain in the employ of Employer.

NOW, THEREFORE, in consideration of the mutual promises, covenants and conditions herein, the parties agree as follows:

### AGREEMENT

1. **Deferred Compensation.** Employer hereby establishes the following ineligible nonqualified deferred compensation plan pursuant to IRC Section 457(f) (the "Plan") and agrees to pay to Employee, subject to the terms and conditions set forth in this Plan, the deferred compensation benefits provided for herein.

1.1 **Deferred Compensation Account.** During the term of this Plan, Employer shall credit contribution amounts to a deferred compensation account established for Employee's future contingent benefit pursuant to the provisions of this Plan. All amounts credited to the deferred compensation account shall accrue interest at the rate of Employer's five (5) year jumbo certificate rate, adjusted annually on January 1 of each year compounded daily.

**1.1.1   Base Contribution.** Each year during the term of this Plan, commencing with the end of the 2004 calendar year, Employer shall credit to such deferred compensation account a base contribution amount of One Hundred Thousand and No/100 Dollars ($100,000.00). Such base contribution to the deferred compensation account shall be increased each year during the term of this Plan by ten percent (10%) over the prior year's contribution (the "Base Contribution"). The Base Contribution shall be made annually, following the close of the calendar year, as soon as it is practicable to determine the amount of such contribution based on the terms and conditions of this Plan.

**1.1.2   Incentive Contribution.** Subject to paragraph 1.1.3 below, each year during the term of this Plan, commencing with the end of the 2004 calendar year, Employer shall credit to such deferred compensation account the following incentive contribution amounts ("Incentive Contribution"). The Incentive Contribution shall be made annually, following the close of the calendar year, as soon as it is practicable to determine the amount of such contribution based on the terms and conditions of this Plan:

**1.1.2.1   Annual Asset Growth.** Base level asset growth is four and one-tenth percent (4.1%). Employer shall credit an Incentive Contribution to the deferred compensation account equal to that year's Base Contribution, multiplied by the percentage increase in total assets of Employer in excess of four and one-tenth percent (4.1%), as indicated on the December 31 NCUA Financial Performance Report, over the prior December 31 Report (e.g., a six percent (6%) increase in total assets results in a one and nine-tenths percent (1.9%) additional Incentive Contribution).

**1.1.2.2   Annual Membership Growth.** Base level membership growth is one percent (1%). Employer shall credit an Incentive Contribution to the deferred compensation account equal to that year's Base Contribution, multiplied by the percentage increase in membership in Employer in excess of one percent (1%), as indicated on the December 31 NCUA Financial Performance Report, over the prior December 31 Report (e.g., a two and one-half percent (2½%) increase in membership results in a one and one-half percent (1½%) additional Incentive Contribution).

**1.1.2.3   Net Worth.** The initial base level capital adequacy is eight percent (8%). Employer may adjust the base level capital adequacy amount annually prior to the end of the calendar year, in conjunction with its annual budgeting process. The initial or adjusted base level shall remain in effect until December 31 following any subsequent adjustment. Employer shall credit an Incentive Contribution to the deferred compensation account equal to three percent (3%) of that year's Base Contribution, if Employer's capital adequacy (net worth/total assets) as indicated on the December 31 NCUA Financial Performance Report is in excess of the base level capital adequacy then in effect.

**1.1.3   Incentive Contribution Limitation.** Notwithstanding the foregoing to the contrary, in the event that Employer's capital adequacy (net worth/total assets) as indicated on the December 31 NCUA Financial Performance Report for any given year during the term of this Plan, is less than the base level capital adequacy then in effect pursuant to paragraph 1.1.2.3, or in the event that Employer's return on assets as indicated on the December

31 NCUA Financial Performance Report for any given year during the term of this Plan is less than the base level return of assets then in effect pursuant to the following sentence, then no Incentive Contribution for such year shall be made pursuant to paragraphs 1.1.2.1, 1.1.2.2. or 1.1.2.3. The initial base level return on assets is one-half percent (½%). Employer may adjust the base level return on assets annually prior to the end of the calendar year, in conjunction with its annual budgeting process. The initial or adjusted base level shall remain in effect until December 31 following any subsequent adjustment.

     **1.2   Investment Authority.** Any amounts so credited to such deferred compensation account and which may be set aside by the Employer may be retained by the Employer for use in its routine lending and investing operations, or invested in life insurance on Employee's life, mutual funds, securities, or any other assets as may be selected by the Board in its sole discretion. Employer shall not be obligated to invest in any particular assets. In the exercise of the foregoing discretionary investment powers, the Board may delegate such powers to a committee of the Board. The Board or such committee may engage an investment advisor and, if it so desires, may delegate to such investment advisor full or limited authority to select assets in which the funds are to be invested. Any such relationship created shall be one of agency alone.

     **1.3   Risk of Forfeiture.** Employee understands and agrees that until his right to the contingent deferred compensation is free of a substantial risk of forfeiture, as provided herein, and is actually paid to him pursuant to this Plan, Employer has full use and ownership of any such amounts so credited or set aside.

     **1.4   Ownership of Assets.** Title to and beneficial ownership of any assets, including the right to name a beneficiary in the case of life insurance, whether in the form of cash or investments which the Employer may intend to use to pay the contingent deferred compensation hereunder, shall at all times remain in the Employer and be subject to the claims of Employer's general creditors, and the Employee and his designated beneficiary shall not have any property interest whatsoever in any specific asset or fund of the Employer.

     **1.5   Unfunded Plan.** Notwithstanding anything in this Plan to the contrary, Employer shall have no obligation to set aside, earmark, or entrust any fund or money with which to pay its obligation under this Plan. At no time shall Employee be deemed to have any lien or right, title or interest in or to any specific investment or asset of Employer. Employee, his beneficiaries, or any successor in interest shall be and remain an unsecured general creditor of Employer in the same manner as any other unsecured general creditor of Employer.

     **1.6   Book Reserve Account.** Employer shall establish a book reserve account to accrue the liability for Employee's future contingent deferred compensation benefit pursuant to the provisions of this Plan. At least annually, Employer shall credit an amount sufficient to accrue the liability necessary to provide Employee with the deferred compensation benefits to be paid under the terms of this Plan.

**2. Conditions to Receipt of Deferred Compensation.** Employee shall have a right to receive the Plan Benefit, as defined in paragraph 3.3, only upon the fulfillment of the conditions set forth in paragraph 2.1 below:

**2.1 Employment.** Employee continuously remains in Employer's service through January 15, 2014, devotes such time and attention to the business of Employer as may be necessary, uses his best efforts to provide faithful and satisfactory service to Employer, and is in full compliance with any existing employment contract between Employer and Employee as may exist from time to time.

**2.2 Termination of Employment.** In the event that Employee's employment with Employer is terminated by Employer, other than for cause, prior to satisfying the conditions specified in paragraph 2.1, Employee shall be deemed to have satisfied the conditions set forth in paragraph 2.1, as of the date of such termination, so long as Employee is otherwise in full compliance with the provisions of this Plan.

**2.2.1** For purposes of this Plan, "for cause" shall be defined as set forth in subparagraph a.1. of the tenth paragraph of the Employment Agreement referred to in Recital B, or in any replacement or successor employment agreement. In the event that no employment agreement should be in effect at the time of termination of employment, "for cause" shall be defined as Employee's acts of dishonesty, insubordination, disloyalty, termination or restriction of bond eligibility, bankruptcy, willful breach of express contract terms, illegal acts, self-dealing or transactions involving conflict of interest, gross incompetence, gross negligence or general misconduct.

**2.3 Disability of Employee.** In the event that Employee shall become totally disabled during Employee's employment with Employer prior to satisfying the conditions specified in paragraph 2.1, Employee shall be deemed to have satisfied the conditions set forth in paragraph 2.1, as of the date of such total disability, so long as Employee is otherwise in full compliance with the provisions of this Plan.

**2.3.1** For purposes of this Plan, "total disability" shall be defined as Employee's inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for a continuous period of not less than twelve (12) months, or is by reason of any medically determinable physical or mental impairment which can be expected to result in death or can be expected to last for as continuous period of not less than twelve (12) months, receiving income replacement benefits for a period of no less than three (3) months under that certain disability insurance policy No. _____ issued by _____ or any successor or replacement policy covering Employee. Such condition shall be certified by a medical doctor selected by Employee, or by a panel consisting of three (3) medical doctors, one of whom has been selected by Employer or Employee, one of whom has been selected by Employer, and the third of whom has been selected by the two so appointed. The decision of such medical doctors upon the question of the total disability of Employee shall be conclusive on all parties.

**2.4   Change of Control.**  In the event that (i) Employee's employment shall be terminated for any reason, (ii) Employee's day-to-day responsibilities, compensation and benefits are substantially reduced, or (iii) Employee's title and position are substantially reduced, other than "for cause" as defined in paragraph 2.2.1, all upon the occurrence or within six (6) months of the completion of a change of control of Employer, Employee shall be deemed to have satisfied the conditions specified in paragraph 2.1, as of the date of such termination or substantial reduction, so long as Employee is otherwise in full compliance with the provisions of this Plan.

**2.4.1**  For purposes of this Agreement, "change in control" shall be defined as set forth in Treasury Regulations implementing IRC §409 A(a)(2)(A)(v).

**2.5   Failure to Satisfy Conditions.**  If the conditions set forth in paragraph 2.1 are not satisfied or deemed to be satisfied pursuant to paragraphs 2.2, 2.3, or 2.4, Employee shall immediately forfeit any and all rights to any amount of deferred compensation payable under this Plan.

**3.  Payment of Deferred Compensation.**

**3.1   Commencement of Deferred Compensation Payments.**  The Plan Benefit, as hereinafter defined, shall be paid to the Employee or his designated beneficiary, unless forfeited due to the failure of Employee to satisfy the conditions of this Plan, upon the earliest of the following (hereinafter defined as the Commencement Date):

**3.1.1**  The first day of the month following the month in which Employee shall have satisfied the conditions specified in paragraph 2.1,

**3.1.2**  The first day of the month next following Employee's termination of employment by Employer, other than for cause, as defined in paragraph 2.2.1,

**3.1.3**  The first day of the fourth month following the month in which Employee becomes totally disabled, as defined in paragraph 2.3.1, or

**3.1.4**  The first day of the month next following Employee's termination or substantial reduction of employment, upon a change of control of Employer, as defined in paragraph 2.4.1.

**3.2   Method and Manner of Payment of Deferred Compensation.**

**3.2.1**  Provided Employee has satisfied the terms and conditions for payment of the Plan Benefit, Employer shall pay the Plan Benefit, as hereinafter defined, to the Employee, or his designated beneficiary in the case where Employee is not living on the Commencement Date, in one lump-sum payment, payable on the Commencement Date.

**3.2.2**  If payment is to be paid to Employee under the Plan, and Employee dies before having received payment, such payment due after Employee's death shall be paid to his designated beneficiary.

Page 5 -   KEYS FEDERAL CREDIT UNION § 457(f) DEFERRED      *11292.3.doc\TAH\73\23\2005-7*
COMPENSATION PLAN

3.2.3  If no such beneficiary shall have been designated, any lump-sum payment due the Employee shall be paid to the Employee's estate.

3.2.4  If the Employee's designated beneficiary should die before having received a lump-sum payment provided under the Plan, such amounts due shall be paid to the estate of such designated beneficiary.

3.2.5  The beneficiary referred to in this Plan may be designated or changed by the Employee (without the prior consent of any prior beneficiary) on a form provided by the Employer and delivered to the Employer, in the form provided in Schedule A, attached hereto, or such other form acceptable to Employer in its absolute discretion.

3.2.6  In the event Employee names more than one beneficiary, each beneficiary shall receive equal shares unless otherwise designated by Employee on Employee's designation of beneficiary form.

3.3  Plan Benefit.

3.3.1  In the event that Employee shall have satisfied the conditions set forth in paragraph 2.1, Employee shall receive a Plan Benefit in an amount equal to the amount credited to the deferred compensation account created pursuant to paragraph 1.1, as of the Commencement Date.

3.3.2  In the event that Employee shall be deemed to have satisfied the conditions of paragraph 2.1 pursuant to the provisions of paragraphs 2.2, 2.3 or 2.4, Employee shall receive a Plan Benefit equal to the amount credited to the deferred compensation account created pursuant to paragraph 1.1, as of the applicable Commencement Date.

3.4  Incapacity of Recipient.  If the Board determines that any person to whom any payment is payable under this Plan is unable to care for his or her own affairs because of illness or accident, or is a minor, any payment due (unless a prior claim therefor shall have been made by a duly appointed guardian, committee or other legal representative) may be paid to the spouse, a child, a parent, or a brother or sister, or to any person deemed by the Board to have incurred expense for such person otherwise entitled to payment, in such manner and proportions as the Board may determine.  Any such payment shall be a complete discharge of the liabilities of Employer under this Plan.

3.5  Withholding.  All amounts paid as deferred compensation under the terms of this Plan shall be treated as income by Employee and shall be subject to withholding by Employer for all applicable local, state and federal taxes, including but not limited to federal income tax, FICA and FUTA.  Employee shall remain liable for the payment of all federal, state, and local taxes due on account of payment of the Plan Benefit.

4.  Nature of the Plan.

4.1  Alienability and Assignment Prohibition.  Employee shall have no power or right to transfer, sell, assign, alienate, anticipate, hypothecate, pledge, mortgage, levy, attach,

modify or otherwise encumber any of the benefits payable hereunder, nor shall any of such benefits be subject to seizure for the payment of any debts, judgments, alimony or separate maintenance owed by Employee or beneficiary, nor be transferable by operation of law in the event of bankruptcy, insolvency or otherwise. In the event Employee or any beneficiary attempts an assignment, hypothecation, transfer or disposition of the benefits hereunder, the Employer's liability for the payment of any benefits hereunder shall immediately cease and terminate.

**4.2   No Employment Agreement Created.**  This Plan shall not create an employment agreement between the parties hereto. Further, no provision of this Plan shall be deemed to restrict or limit any existing employment agreement between Employer and Employee, nor shall any conditions herein create specific employment rights in the Employee nor limit the right of Employer to discharge Employee as set forth therein.

**4.3   No Trust or Fiduciary Relationship Created.**  No provision of this Plan nor any action taken pursuant or related to this Plan shall create or be construed to create a trust of any kind, or a fiduciary relationship between Employee and Employer.

**4.4   Top Hat Plan.**  This Plan is intended to be a "Top Hat" Plan, primarily for the purpose of providing deferred compensation benefits to a select group of management, or highly compensated employees, and shall be interpreted consistent with the requirements of a "Top Hat" Plan. Employer shall file with the U.S. Department of Labor a Notice of "Top Hat" Plan pursuant to DOL Regulation § 2520.104-23.

5.   **Administration.**

**5.1   Administrator.**  Employer shall administer this Plan. The Board shall exercise all Employer functions or responsibilities. The Board may delegate all or part of its administrative duties to one or more agents and may retain advisors to assist it. The Board may consult with and rely upon the advice of counsel, who may be counsel for Employer. If Employer does not currently employ the services of a Certified Public Accountant, the Board shall appoint a qualified Certified Public Accountant. Employer shall be the plan administrator under federal laws and regulations applicable to plan administration, and shall comply with such laws and regulations.

**5.2   Authority.**  Employer shall interpret this Plan, shall decide any questions about the rights of Employee and his beneficiaries, and in general shall administer this Plan. Any decision by Employer within its authority shall be final and bind all parties. Employer shall have absolute discretion to carry out its responsibilities under this Plan.

6.   **Named Fiduciary and Claims Procedure.**

**6.1   Named Fiduciary.**  The Named Fiduciary of the Plan for purposes of the claims procedure under this Agreement is Employer.

6.1.1  Employer shall have the right to change the Named Fiduciary of the Plan.  Employer shall give the Employee written notice of any change of the Named Fiduciary.

6.2  Claims Procedure.  Benefits shall be paid in accordance with the provisions of this Plan.  The Employee, a designated beneficiary, or any other person claiming through the Employee (hereinafter collectively referred to as the "Claimant") shall make a written request for the benefits provided under this Plan.  This written claim shall be mailed or delivered to the Named Fiduciary.

6.3  Denial of Claim.  If the claim is denied, either in whole or in part, notice of the decision shall be mailed to the Claimant within a reasonable time period.  This time period shall not exceed more than ninety (90) days after the receipt of the claim by the Named Fiduciary.

6.4  Basis for Denial.  The Named Fiduciary shall provide a written notice to each Claimant who is denied a claim for benefits under this Plan.  The notice shall set forth the following information:

6.4.1  The specific reasons for the denial;

6.4.2  The specific reference to pertinent Plan provision upon which the denial is based;

6.4.3  Description of any additional material or information necessary for the Claimant to perfect the claim and an explanation of why such material or information is necessary; and

6.4.4  Appropriate information and explanation of claims procedure under this Agreement so to permit the Claimant to submit his claim for review.

6.5  Appeal.  The claims procedure under this Plan shall allow the Claimant a reasonable opportunity to appeal a denied claim and to get a full and fair review of that decision from the Named Fiduciary.

6.5.1  The Claimant may exercise his right of appeal by submitting a written request for review of the denied claim to the Named Fiduciary.  This written request for review must be submitted to the Named Fiduciary within sixty (60) days after receipt by the Claimant of the written notice of denial.

6.5.2  The Claimant shall have the following rights under this appeal procedure:

6.5.2.1  To request a review upon written application to the Named Fiduciary;

6.5.2.2  To review pertinent documents with regard to the Plan;

Page 8 -   KEYS FEDERAL CREDIT UNION § 457(f) DEFERRED
COMPENSATION PLAN

    **6.5.2.3** To submit issues and comments in writing;

    **6.5.2.4** To request an extension of time to make a written submission of issues and comments; and

    **6.5.2.5** To request that a hearing be held to consider Claimant's appeal.

  **6.6** **Review.** The decision on the review of the denied claim shall promptly be made by the Named Fiduciary:

   **6.6.1** Within sixty (60) days after the receipt of the request for review, if no hearing is held.

   **6.6.2** Within ninety (90) days after the receipt of the request for review, if an extension of time is necessary in order to hold a hearing.

    **6.6.2.1** If an extension of time is necessary in order to hold a hearing, the Named Fiduciary shall give the Claimant written notice of the extension of time and the hearing. This notice shall be given prior to any extension.

    **6.6.2.2** The written notice of extension shall indicate that an extension of time will occur in order to hold a hearing on Claimant's appeal. The notice shall also specify the place, date and time of that hearing and the Claimant's opportunity to participate in the hearing. It may also include any other information the Named Fiduciary believes may be important or useful to the Claimant in connection with the appeal.

  **6.7** **Hearing.** The decision to hold a hearing to consider the Claimant's appeal of the denied claim shall be within the sole discretion of the Named Fiduciary, whether or not the Claimant requests such a hearing.

  **6.8** **Decision.** The Named Fiduciary's decision on review shall be made in writing and provided to the Claimant within the specified time periods in paragraph 6.6. This written decision on review shall contain the following information, which shall be written in a manner calculated to be understood by the Claimant:

   **6.8.1** The decision(s);

   **6.8.2** The reasons for the decision(s); and

   **6.8.3** Specific references to the Plan provisions on which the decision(s) is (are) based.

## 7. Miscellaneous.

**7.1  Binding Obligation.**  Employer expressly agrees that it shall not merge or consolidate into or with another employer or sell substantially all of its assets to another company, firm or person until such other company, firm or person expressly agrees, in writing, to assume and discharge the duties and obligations of Employer under this Plan. This Plan shall be binding upon the parties hereto, their successors, beneficiaries, heirs, and personal representatives.

**7.2  Choice of Law and Venue.**  This Plan is being delivered and is intended to be performed in the state of Florida and shall be construed and enforced in accordance with the laws of the state of Florida, to the extent not superseded by any applicable federal laws or regulations, and any action brought hereunder shall be brought in Monroe County or Dade County, Florida.

**7.3  Attorney's Fees.**  In the event any party hereto shall bring any action against any other party for the enforcement or protection of rights under this Plan, the prevailing party shall be entitled to reasonable attorney's fees, together with costs of suit, including attorney's fees incurred by reason of appellate proceedings in connection herewith, and including proceedings in bankruptcy or insolvency.

**7.4  Captions and Paragraph Headings.**  Captions and paragraph headings used herein are for convenience only, are not a part of this Plan, and shall not be used in construing it.

**7.5  Waiver.**  Failure by either party at any time to require performance by the other party of any of the provisions hereof shall in no way affect the party's right hereunder to enforce the same, nor shall any waiver by either party of any breach hereof be held to be a waiver of any succeeding breach, or a waiver of this non-waiver clause.

**7.6  Integration.**  This Plan and any other written agreement referred to herein supersede all oral statements and any previous oral or written agreements and contains the final and entire agreement of the parties hereto with respect to the subject matter hereof and the conditions contemplated hereby.

**7.7  Effect on Employer Benefit Plans.**  Nothing contained in this Plan shall affect the right of Employee to participate in or be covered by any qualified or non-qualified pension, profit sharing, group, bonus, regular compensation or other supplemental compensation or fringe benefit plan constituting a part of Employer's existing or future compensation structure.

**7.8  Binding Effect.**  All of the covenants, agreements, conditions and terms contained in this Plan shall be binding upon, apply and inure to the benefit of the successors and assigns of Employer, and the heirs, executors, administrators and legal representatives of Employee. However, nothing in this paragraph shall be construed as modifying in any way any restrictions on assignment or transfer set forth in this Plan.

IN WITNESS WHEREOF, the parties have executed this Plan on the date first above written.

**EMPLOYER**

**EMPLOYEE**

Keys Federal Credit Union, a federally
chartered credit union

By:_____

John Dolan-Heitlinger

Name:_____
      Its Chairperson, for and on behalf of
      the Board of Directors of Keys
      Federal Credit Union

# 2

IN THE CIRCUIT COURT OF THE
SIXTEENTH JUDICIAL CIRCUIT IN AND
FOR MONROE COUNTY, FLORIDA

CIVIL DIVISION

JOHN DOLAN-HEITLINGER,

Plaintiff,

vs.

KEYS FEDERAL CREDIT UNION,

Defendant.

_____/

Case No. 2008-CA-225-K

## NOTICE OF APPEARANCE ON BEHALF
## OF DEFENDANT, KEYS FEDERAL CREDIT UNION

Adorno & Yoss LLP hereby enters its appearance as counsel on behalf of

Defendant, Keys Federal Credit Union.


Alan Rosenthal
Florida Bar No. 220833
Adorno & Yoss LLP
Attorneys for Defendant
Suite 400
2525 Ponce de Leon Boulevard
Miami, Florida 33134
Telephone: 305-460-1000
Facsimile: 305-460-1422
E-mail: ar@adorno.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Appearance on Behalf of Defendant, Keys Federal Credit Union was faxed and mailed this _15th_ day of February, 2008 to Robert E. Weisberg, Esquire, Law Offices of Robert E. Weisberg, 1450 Madruga Avenue, Suite 302, Coral Gables, Florida 33146; and Jose F. Torres, Esquire, Law Offices of Campbell & Malafy, 2655 LeJeune Road, Suite 201, Coral Gables, Florida 33134.

# 3

IN THE CIRCUIT COURT OF THE
SIXTEENTH JUDICIAL CIRCUIT IN
AND FOR MONROE COUNTY,
FLORIDA

CIVIL DIVISION
CASE NO. 2008- CA-225-K

JOHN DOLAN-HEITLINGER,

    Plaintiff,

vs.

KEYS FEDERAL CREDIT UNION,

    Defendant.

_____/

**DAVID J. AUDLIN, JR.**

Server: _____
Printed Name: D. Crowley
Date: 2/18/08   Time: 2:45 PM
M.C.S.O. Appointed # ____14
In Good Standing In the 16th
Judicial Circuit in and for
Monroe County

CIVIL ACTION SUMMONS

**THE STATE OF FLORIDA**
TO EACH SHERIFF OF SAID STATE:

**YOU ARE HEREBY COMMANDED** to serve this summons and a copy of the
complaint or petition in this action on defendant:

Officer or Director of:

Keys Federal Credit Union
553 Peary Court Road
Key West, Florida 33040

Each defendant is required to serve written defense to the
complaint or petition on Plaintiff's Attorneys, whose names and
addresses are as follows:

Robert E. Weisberg, Esq.                  Jose F. Torres, Esq.
Law Offices of Robert E. Weisberg         Law Offices of Campbell
1450 Madruga Avenue, Suite #302           & Malafy
Coral Gables, Florida 33146               2655 LeJeune Road, #201
(305) 666-6095                            Coral Gables, Florida 33134
(305) 666-6296 (fax)                      (305) 447-8580
                                          (305) 446-8383 (fax)

within 20 days after service of this summons on that defendant,
exclusive of the day of service, and to file the original of the
defenses with the Clerk of this Court either before service on
Plaintiff's attorney or immediately thereafter.  If a defendant
fails to do so, a default will be entered against that defendant
for the relief demanded in the complaint or petition.

80044.B/2(o-S)

DATED on _2-12-08_

2008-CA-225-K

Clerk of the Court

By _Maislady Lopez_
Deputy Clerk

# 4

IN THE CIRCUIT COURT OF THE 16TH
JUDICIAL CIRCUIT OF THE STATE OF
FLORIDA IN AND FOR MONROE COUNTY

CASE NO:   2008-CA-225-K

JOHN DOLAN-HEITLINGER,

         **Plaintiff**

Vs.

KEYS FEDERAL CREDIT UNION,

         **Defendant**

_____/

## SCHEDULING ORDER

    **THIS CASE** having been reviewed by the Court pursuant to Rule 1.200(a), Florida Rules of Civil Procedure, and Rule 2.085, Florida Rules of Judicial Administration, with regard to the Court's obligations thereunder, and Court being fully advised in the premises, it is hereby,

    **ORDERED as follows:**

    Counsel herein are advised that the deadlines set forth herein will not be extended solely by reason of the failure to serve process on parties, addition of new parties, claims or counterclaims to the case, pendency of motions directed to the pleadings, changes in the trial date, or stipulations between the parties or their counsel, absent good cause shown and an order specifically extending the deadlines.

1. **SERVICE OF SCHEDULING ORDER:**  If service of process has not yet been effected on Defendant(s) at the time this Scheduling Order is entered, Plaintiff's attorney is hereby directed to serve a copy of this Order on all Defendants once service is obtained, and further, shall serve a copy on any new party to the action, within ten days service of pleadings to new party.

2. **FACT WITNESSES AND EXHIBITS:**  All fact witnesses and exhibits must be disclosed by *December 31, 2008.* ✓

3. **EXPERT WITNESSES:**  All expert witnesses must be disclosed by *January 31, 2009.* ✓

4. **DISCOVERY CUTOFF:** All discovery shall be completed by *February 28, 2009.* "Completed" means responses have been received, motions to compel have been ruled on, and all discovery matters fully resolved. This discovery deadline shall not prevent the taking of depositions to perpetuate testimony and depositions of records custodians to establish evidentiary predicates for trial, however, depositions to perpetuate testimony and of record custodians must be completed prior to the Pretrial Conference, and no continuances will be granted as a result of failure to comply with this requirement.

5. **MOTION PRACTICE AND PROCEDURE:**

   a. **MOTIONS DIRECTED TO THE PLEADINGS:** All motions directed to the pleadings shall be accompanied by a notice of hearing that sets any such motion for hearing to be held within 60 days of the date of filing of the motion. Any party unable to secure hearing time to comply herewith is directed to call the Court's Judicial Assistant immediately so that hearing time can be made available. **THE PARTIES ARE ADVISED THAT THE COURT'S TRIAL ORDER WILL SUMMARILY DENY ALL MOTIONS DIRECTED TO THE PLEADINGS THAT HAVE BEEN FILED WITHOUT BEING SET FOR HEARING AS REQUIRED ABOVE. THESE REQUIREMENTS MAY BE EXCUSED ONLY UPON GOOD CAUSE SHOWN, UPON MOTION OF ANY PARTY AND ORDER OF THE COURT.**

   b. Motions may be set either before the Circuit Judge, or before a Special Magistrate. Hearings before the Special Magistrate may be set by calling Judicial Assistant, Matilda Winters, at (305) 295-3132. Motions set before the Judge of 30 minutes or less may normally be scheduled on the Judge's Open Motion calendar by calling the Clerk of Court, Civil Division, at (305) 294-4641. Open motion hearings in which any party is appearing by telephone may only be scheduled in the afternoon session. The party scheduling the hearing is responsible to confirm with all other counsel whether telephone appearance is being requested. No telephone appearances will be permitted in the morning open motion session. Motions before the Judge in excess of 30 minutes require prior approval of the Court, and will be specially set by the Judicial Assistant, Kathy Rupp, by calling (305) 292-3433.

   c. Motions shall be in the Court file before hearing time is reserved and a courtesy copy of all motions and memoranda in response

should be mailed or delivered (no facsimiles) to the Judge's Chambers for delivery at least 5 days before the hearing. Should the Court find that there is no motion in the Court file at the time of the hearing, the hearing will be cancelled and no notice shall be given to the parties of such cancellation.

d. Counsel shall not schedule a motion hearing on a date or time that has not been cleared on opposing counsel's calendar, except with leave of Court, nor may a motion be set after the motion hearing deadline. Motions must be set for hearing within 90 days of filing, except as set forth in paragraph (a), above. Oral argument shall be deemed waived on motions not heard within 90 days of filing. _Allstate Ins. Co. v. Montgomery Ward_, 538 So.2d 974 (Fla. 5th DCA 1989).

e. Counsel shall meet and confer regarding all disputed issues before setting a hearing to resolve those issues on motion. The notice of motion shall certify compliance with the meet and confer requirement, and shall reflect the date, time, location, type of meeting (telephone or in person), and persons present.

f. Failure to comply with these requirements may result in removal of motions from the docket, rescheduling of motions by the Court, denial of motions, or sanctions, as appropriate.

g. Emergency Motions: An emergency motion is based on an immediate threat to life, limb or property. The Court will set aside all other pending matters to address _bona fide_ emergencies. Scheduling conflicts between counsel, last minute attempts to modify deadlines, and similar issues are not "emergencies" and may not be styled as such to obtain expedited relief from the Court. Counsel are directed to meet and confer regarding such issues and either submit a stipulation and agreed order, or to schedule such matters for hearing on the Court's regular motion calendar.

h. **GENERAL MOTION FILING DEADLINE:** All motions, including summary judgment motions, shall be filed by _March 31, 2009._ Any motion filed after that date will be deemed untimely and denied.

i. **GENERAL MOTION HEARING DEADLINE:** Timely filed motions shall be scheduled and heard on or before _April 30, 2009._ Any motions not heard by that date will be denied.

6. **MEDIATION REQUIREMENT:** The parties will complete mediation of this case after the Motion Hearing Deadline and before the Pre-trial Conference. Previous, unsuccessful attempts at mediation shall not be a basis to be excused from this mediation requirement. Plaintiff's counsel is directed to coordinate the mediation with all other counsel. All parties are ordered to appear in person for the mediation, and a claims adjuster with full settlement authority is also ordered to appear in person in cases where any portion of the defense is being conducted by an insurance carrier. Failure to comply with this requirement may be sanctioned by the Court as appropriate. If no mediation report is in the Court file at the Pretrial Conference, the Court may impose appropriate sanctions, including case dismissal or striking of pleadings.

7. **MOTIONS IN LIMINE:** These motions must be filed and heard as set forth above. The Court will hear motions in limine after these deadlines only upon a showing that the factual basis for the motion could not have been reasonably known by counsel before the general motion deadline.

8. **TRIAL SETTING AND PRETRIAL CONFERENCE.** Counsel are advised that this Order is not a Trial Order, but is a Scheduling Order to enforce compliance with time standards set forth below. By Separate Trial Order, this case will be set for trial on or after *June 1, 2009.* Counsel are directed to be fully prepared for trial by this date. Counsel shall notify the Court immediately, if trial of this cause is anticipated to be longer than 5 days, by serving and filing a Notice of Anticipated Lengthy Trial estimating the number of trial days, and delivering providing a copy of same to the Judge's Chambers.

9. **OVER TIME STANDARDS CASES:** Counsel are advised that discovery will not be reopened, and continuance of the trial date will not be granted for cases that have exceeded these time standards:

> (Civil: **18 months** from the filing of the Complaint ("FFOC") for **jury** cases, **12 months** FFOC for non-jury cases; Family – Contested: **180 days** FFOC, Uncontested: **90 days** FFOC)

absent a showing of extraordinary circumstances that justify such a request.

10. **SETTLEMENT:** Counsel are required to file a fully signed, written stipulation and proposed order of dismissal before any settled case will be taken off the Court's docket.

11. **FACSIMILE TRANSMISSIONS:** Please call the Judicial Assistant in Chambers before initiating a facsimile transmission, to confirm authorization or to receive instructions for alternate methods of document delivery to the Court.

DONE and ORDERED in Chambers at Key West, Monroe County, Florida, this 25th day of February, 2008.

David J. Audlin, Jr.

_____
DAVID J. AUDLIN, JR.
CIRCUIT JUDGE

cc:    Robert E. Weisberg, Esq.
      1450 Madruga Avenue, Suite 302
      Coral Gables, Florida 33146

      Jose F. Torres, Esq.
      2655 LeJeune Road, Suite 201
      Coral Gables, Florida 33134

*Revised 2/5/08*

# RETURN OF SERVICE

**State of Florida**                    **County of Monroe**                    **16th Judicial Circuit Court**

Case Number: 2008-CA-225-K

Plaintiff:
**John Dolan-Heitlinger**

vs.

Defendant:
**Keys Federal Credit Union**

For:
Robert Weisberg, Esq
Law Offices of Robert E. Weisberg
1450 Madruga Ave
Suite 302
Coral Gables, FL 33146

Received by Service of Process on the 12th day of February, 2008 at 11:55 am to be served on **KEY FEDERAL CREDIT UNION, 553 Peary Court Road, Key West, FL. 33040.**

I, Dr. Denny Howley, M.C.S.O. # 74, do hereby affirm that on the 12th day of **February, 2008 at 2:15 pm, I:**

**SUBSTITUTE-PROFESSIONAL:** served by delivering a true copy of the **Summons, Complaint, Exhibits A and B** with the date, hour of service, my identification number and initials endorsed thereon by me, at the within-named person's usual place of business, to a person fifteen (15) years old or above, who has been designated to accept service as authorized agent: **Julie Young as Branch Manager** in compliance with State Statutes.

I certify that I am over the age of 18, have no interest in the above action,   and am a Monroe County Special Process Server, in good standing, in the 16th Judicial Circuit in which the process was served.
Under Penalty of perjury, I declare I have read and foregoing documents and the facts stated in it are true. NO NOTARY REQUIRED PURSUANT TO F.S. 92.525(2).

**Dr. Denny Howley, M.C.S.O. # 74**
Process Server

**Service of Process**
P.O.B. 45-2354
Miami, FL. 33245-2354
(305) 226-6809

Our Job Serial Number: 2008000030

80044 Bh(0-5)

Copyright © 1992-2005 Database Services, Inc. - Process Server's Toolbox V5.5q

2/15/0

IN THE CIRCUIT COURT OF THE
SIXTEENTH JUDICIAL CIRCUIT IN AND
FOR MONROE COUNTY, FLORIDA

CIVIL DIVISION

JOHN DOLAN-HEITLINGER,

     Plaintiff,

vs.

KEYS FEDERAL CREDIT UNION,

     Defendant.

_____/

Case No. 2008-CA-225-K

## NOTICE OF APPEARANCE ON BEHALF
## OF DEFENDANT, KEYS FEDERAL CREDIT UNION

Adorno & Yoss LLP hereby enters its appearance as counsel on behalf of

Defendant, Keys Federal Credit Union.

Alan Rosenthal
Florida Bar No. 220833
Adorno & Yoss LLP
Attorneys for Defendant
Suite 400
2525 Ponce de Leon Boulevard
Miami, Florida 33134
Telephone: 305-460-1000
Facsimile: 305-460-1422
E-mail: ar@adorno.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing Notice of Appearance on Behalf of Defendant, Keys Federal Credit Union was faxed and mailed this _15th_ day of February, 2008 to Robert E. Weisberg, Esquire, Law Offices of Robert E. Weisberg, 1450 Madruga Avenue, Suite 302, Coral Gables, Florida 33146; and Jose F. Torres, Esquire, Law Offices of Campbell & Malafy, 2655 LeJeune Road, Suite 201, Coral Gables, Florida 33134.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

2

# 5

IN THE CIRCUIT COURT OF THE SIXTEENTH JUDICIAL CIRCUIT IN AND FOR MONROE COUNTY, FLORIDA

CIVIL DIVISION

JOHN DOLAN-HEITLINGER,

Case No. 2008-CA-225-K

     Plaintiff,

vs.

KEYS FEDERAL CREDIT UNION,

     Defendant.

_____/

## ANSWER AND AFFIRMATIVE DEFENSES OF DEFENDANT, KEYS FEDERAL CREDIT UNION

Defendant, Keys Federal Credit Union ("Keys Federal"), answers the Complaint and Demand for Jury Trial (the "Complaint") filed by Plaintiff, John Dolan-Heitlinger ("Heitlinger"), as follows:

1.     Keys Federal is without knowledge as to the allegations contained in Paragraph 1 and therefore deny same.

2.     Keys Federal admits the allegations contained in Paragraph 2.

3.     Keys Federal admits the allegations contained in Paragraph 3.

4.     Keys Federal denies the allegations contained in Paragraph 4.

5.     Keys Federal admits the allegations contained in Paragraph 5.

6.     Keys Federal admits the allegations contained in Paragraph 6.

7.     Keys Federal denies the allegations contained in Paragraph 7.

8.     Keys Federal is without knowledge as to the allegations contained in Paragraph 8 and therefore denies same.

Received by Monroe County Clerk's Office

Date 3/4/08 By _____

9.      Keys Federal is without knowledge as to the allegations contained in Paragraph 9 and therefore denies same.

10.     Keys Federal denies the allegations contained in Paragraph 10.

11.     Keys Federal admits that the document attached as Exhibit A to the Complaint is a copy of an unexecuted agreement titled President's Employment Agreement (the "Employment Agreement") and that the document speaks for itself.   Keys Federal denies the remaining allegations in Paragraph 11.

12.     Keys Federal denies the allegations contained in Paragraph 12 because the document speaks for itself.

13.     Keys Federal denies the allegations contained in Paragraph 13 because the document speaks for itself.

14.     Keys Federal admits that the document attached as Exhibit B to the Complaint is a copy of a Keys Federal Credit Union § 457(f) Deferred Compensation Plan agreement (the "Deferred Compensation Plan" and that the document speaks for itself.  Keys Federal denies the remaining allegations in Paragraph 14.

15.     Keys Federal denies the allegations contained in Paragraph 15 because the document speaks for itself.

16.     Keys Federal denies the allegations contained in Paragraph 16 because the document speaks for itself.

17.     Keys Federal denies the allegations contained in Paragraph 17 because the document speaks for itself.

18.     Keys Federal denies the allegations contained in Paragraph 18.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

19.     Keys Federal denies the allegations contained in Paragraph 19.

20.     With regard to the allegations in Paragraph 20, Keys Federal admits that Heitlinger was not permitted to attend the October 25, 2007 board meeting. Keys Federal denies the remaining allegations in Paragraph 14.

21.     Keys Federal admits the allegations contained in Paragraph 21.

22.     Keys Federal admits the allegations contained in Paragraph 22.

23.     Keys Federal denies the allegations contained in Paragraph 23.

24.     Keys Federal denies the allegations contained in Paragraph 24.

25.     Keys Federal admits the allegations contained in Paragraph 25.

26.     Keys Federal admits the allegations contained in Paragraph 26.

27.     Keys Federal admits the allegations contained in Paragraph 27.

28.     Keys Federal is without knowledge as to the allegations contained in Paragraph 28 and therefore denies same.

29.     Keys Federal denies the allegations contained in Paragraph 29.

30.     Keys Federal denies the allegations contained in Paragraph 30.

## COUNT I
### (Breach of Contract - Employment Agreement)

31.     With regard to Paragraph 31, Keys Federal incorporates its answers to Paragraphs 1 through 30.

32.     Keys Federal denies the allegations contained in Paragraph 32 because the document speaks for itself.

33.     Keys Federal denies the allegations contained in Paragraph 33.

34.     Keys Federal denies the allegations contained in Paragraph 34.

35.     Keys Federal denies the allegations contained in Paragraph 35.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

WHEREFORE, Defendant, Keys Federal Credit Union, requests the Court to enter final judgment in their favor on Count I of the Complaint and to award it costs, attorneys' fees and such other relief as the Court deems proper.

## COUNT II
### (Breach of Contract – Deferred Compensation Plan)

37.     With regard to Paragraph 37, Keys Federal incorporates its answers to Paragraphs 1 through 30.

38.     Keys Federal denies the allegations contained in Paragraph 38 because the document speaks for itself.

39.     Keys Federal denies the allegations contained in Paragraph 39.

40.     Keys Federal denies the allegations contained in Paragraph 40.

41.     Keys Federal denies the allegations contained in Paragraph 41.

42.     Keys Federal denies the allegations contained in Paragraph 42.

WHEREFORE, Defendant, Keys Federal Credit Union, requests the Court to enter final judgment in their favor on Count II of the Complaint and to award it costs, attorneys' fees and such other relief as the Court deems proper.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

Heitlinger cannot state a cause of action for breach of contract to recover benefits under either the Employment Agreement or the Deferred Compensation Plan because he was terminated "for cause" pursuant to ¶10 of the Employment Agreement.  The actions justifying the "for cause" termination include, but are not limited to:

a.      using Keys Federal's premises for residential leasing arrangements in violation of National Credit Union Association ("NCUA") regulations, and continuing to use

4

Keys Federal's premises for unlawful purposes after being warned, in writing, to cease the unlawful conduct.

b.  actively concealing from the Board of Directors the formation of the creation of a not-for-profit corporate subsidiary of Keys Federal without obtaining the necessary approval and resolution from the Board of Directors in direct violation of internal procedures;

c.  approving and actively concealing from the Board of Directors unlawful compensation packages for Keys Federal personnel including a grossly excessive incentive program in violation of applicable federal laws and regulations, and in violation of his fiduciary and contractual duties to ensure the profitability of Keys Federal;

d.  actively concealing from the Board of Directors an authorized report from an independent consultant stating that the compensation packages he approved were grossly excessive;

e.  willfully obstructing the administrative investigation by Keys Federal into Heitlinger's conduct and activities by directly or indirectly communicating with Keys Federal employees concerning the investigation and thereby breaching the Notice of Administrative Leave agreement he executed on October 26, 2007;

f.  mishandling a sexual harassment claim against the Keys Federal Director of Human Resources by, among other things, failing to conduct a full investigation or to interview the complainant, and actively concealing the investigation from the Board of Directors, all of which constitutes, among other things, gross

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

negligence, gross incompetence, and a breach of Heitlinger's fiduciary and contractual duties;

g.   appointing a Human Resources Director who was neither trained in, nor experienced with, the administration of human resources or the applicability of employment related laws, all of which constitutes, among other things, gross negligence and a breach of Heitlinger's fiduciary and contractual duties;

h.   negligently handling substantial construction contracts for Keys Federal without any prior experience or qualifications, and without the active aid of outside counsel or construction experts, all of which constitutes gross negligence, gross incompetence, and a breach of Heitlinger's fiduciary and contractual duties, and a violation of NCUA regulations and Section 225 of the Financial Institutions Reform, Recovery and Enforcement Act; and

i.   authorizing the purchase of real estate without retaining real estate counsel or monitoring the performance of an employee assigned to handle the purchase who was unqualified and inexperienced. As a result, the land was purchased without clear title and has exposed Keys Federal to liability and substantial expenses with respect to its desired future use of the land.  The failure to perform due diligence or retain real estate counsel violates basic standards of prudence for the management of financial institutions and constitutes, among other things, gross negligence, gross incompetence and a breach of Heitlinger's fiduciary and contractual duties.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

### Second Affirmative Defense

Heitlinger is barred under principles of estoppel, waiver and release, and the doctrine of first breach from bringing a cause of action for breach of contract to recover benefits under either the Employment Agreement or the Deferred Compensation Plan because he failed to comply with his contractual and fiduciary obligations under the agreements, including but not limited to, breaching ¶4 of the Employment Agreement ("Best Efforts") to perform his duties "faithfully, industriously and to the best of his ability, experience and talents."

### Third Affirmative Defense

Heitlinger is barred under principles of estoppel, waiver and release, and the doctrine of first breach from bringing a cause of action for breach of contract to recover benefits under either the Employment Agreement or the Deferred Compensation Plan because he breached his implied duty of good faith and fair dealing to act in the best interest of Key Federal and to use his "best efforts" when performing his duties.

### Fourth Affirmative Defense

Heitlinger cannot state a cause of action for breach of contract to recover benefits under either the Employment Agreement or the Deferred Compensation Plan because he has failed to fulfill the conditions precedent required for receipt of the deferred compensation as set forth in ¶¶2-3 of the Deferred Compensation Plan.

### Fifth Affirmative Defense

Heitlinger cannot state a cause of action for breach of contract to recover benefits under either the Employment Agreement or the Deferred Compensation Plan because he failed to exhaust the administrative remedies set forth in ¶¶6.5 of the Deferred Compensation Plan for reviewing a denial of a claim for benefits.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

## Sixth Affirmative Defense

To the extent that Heitlinger seeks equitable damages, Heitlinger is barred under the doctrine of unclean hands from bringing a cause of action for breach of contract to recover benefits under either the Employment Agreement or the Deferred Compensation Plan as a result of unlawful activities, intentional misconduct, gross negligence and/or gross incompetence in performing his duties under the Employment Agreement.

## Seventh Affirmative Defense

Heitlinger is barred under principles of estoppel, waiver and release, and the doctrine of first breach from bringing a cause of action for breach of contract to recover benefits under either the Employment Agreement or the Deferred Compensation Plan because he willfully obstructed the administrative investigation by Keys Federal into Heitlinger's misconduct and unlawful activities by directly or indirectly communicating with Keys Federal employees concerning the investigation in violation of the Notice of Administrative Leave agreement he executed on October 26, 2007.

Alan Rosenthal
Florida Bar No. 220833
Natalie J. Carlos
Florida Bar No. 0146269
Adorno & Yoss LLP
Attorneys for Defendant
Suite 400
2525 Ponce de Leon Boulevard
Miami, Florida 33134
Telephone: 305-460-1000
Facsimile: 305-460-1422
E-mail: ar@adorno.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the Answer and Affirmative Defenses of Defendant, Keys Federal Credit Union, was faxed and mailed on March 3, 2008 to Robert E. Weisberg, Esquire, Law Offices of Robert E. Weisberg, 1450 Madruga Avenue, Suite 302, Coral Gables, Florida 33146; and Jose F. Torres, Esquire, Law Offices of Campbell & Malafy, 2655 LeJeune Road, Suite 201, Coral Gables, Florida 33134.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

# 6

IN THE CIRCUIT COURT OF THE
SIXTEENTH JUDICIAL CIRCUIT,
IN AND FOR MONROE COUNTY,
FLORIDA

JOHN DOLAN-HEITLINGER,

CASE NO. 2008-CA-225-K

    Plaintiff.

v.

KEYS FEDERAL CREDIT UNION,

    Defendant.

_____/

## NOTICE OF RECEIPT OF MATERIALS FROM THIRD PARTY AND MOTION FOR COURT ORDER SETTING FORTH PROCEDURE FOR EXAMINATION OF THE MATERIALS

PLAINTIFF, JOHN DOLAN-HEITLINGER, by and through undersigned counsel, and pursuant to the applicable Florida Rules of Civil Procedure, file this Notice of Receipt of Materials from Third Party and move this Court for an Order setting forth a procedure for examination of the materials, and in support thereof states:

1. In this action, Plaintiff JOHN DOLAN-HEITLINGER, the former President and Chief Executive Officer of Defendant KEYS FEDERAL CREDIT UNION ("KFCU"), alleges that KFCU breached the Employment Agreement between the parties when KFCU terminated his employment without cause but failed to pay him the severance payment provided in the Employment Agreement. Plaintiff also alleges that KFCU unlawfully breached his Deferred Compensation Plan Agreement with KFCU when failed to pay him the sums due him under the provisions of the Deferred Compensation Plan Agreement upon his not for cause termination. Defendant contends that Plaintiff's termination was "for cause" and that it did not breach the Employment Agreement or the Deferred Compensation Plan Agreement.

2.   On the afternoon of Thursday, May 8, 2008, a former member of Defendant's volunteer Supervisory Committee handed Plaintiff a digital media card.

3.   Plaintiff did not solicit the card.

4.   Plaintiff opened the digital media card to ascertain the contents thereof and determined that the digital media card contained documents from, by, or relating to Defendant and/or Plaintiff's employment with Defendant.

5.   Upon ascertaining the general nature of the documents in the digital media card, Plaintiff notified his attorney on the evening of May 8, 2008 that he had received the card and requested advice on the proper handling of the card.

6.   On Friday, May 9, 2008, Plaintiff's attorneys, after reviewing the applicable Rules of Professional Conduct of the Florida Bar and the Bar's applicable Opinion letters, consulted the "ethics hot line" of the Florida Bar for advice regarding the handling of the card and its contents.

7.   Florida Rule of Civil Procedure 4-4.4(b) provides that "[a] lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender."

8.   Inasmuch as the digital media card was not inadvertently forwarded to Plaintiff or obtained through wrongdoing, the Rules of Professional Conduct do not squarely apply to the situation at hand. As Plaintiff's attorneys have neither seen nor reviewed the contents of the digital media card, they are unable to describe, characterize, or identify the contents of the digital media card.   Plaintiff's attorneys acknowledge the possibility that the digital media card may contain one or more documents which Defendant may consider privileged.

9. Plaintiff's counsel have retained Robert Cintron, Esq., of the Law Offices of Hugh J. Morgan, 317 Whitehead Street, Key West, Florida, for the purpose of retaining physical possession of the digital media card and its contents pending the Court's ruling on the privileged nature, if any, of documents in the digital media card. The digital media card has been delivered to Mr. Cintron at his office. Mr. Cintron has agreed to prepare three sets of Bates stamped hard copies of the documents in the digital media card.

10. In order to identify the contents of the card, while protecting the integrity of the discovery process and the contents of any confidential or otherwise privileged documents, Plaintiff proposes the following procedure and respectfully requests an Order from the Court authorizing the following process:

(a) Within five (5) days of the date of the Court's Order, Mr. Cintron will provide one set of the Bates-stamped documents to Defendant for review and for preparation of a privilege log identifying by Bates number and describing the media card documents which Defendant contends are privileged and identifying the privilege which Defendant contends attach to each document;

(b) Mr. Cintron will retain the other two sets of documents and the media card under seal pending receipt of Defendant's privilege log;

(c) Defendant shall submit its privilege log for the card documents to the Court, to Robert Cintron, Esq., and to Plaintiffs' counsel within 20 days of receipt of the documents;

(d) Upon receipt of Defendant's privilege log, Mr. Cintron will release all non-privileged documents to Plaintiff; and

(e) Any dispute(s) as to the disposition of the documents on the privilege log are to be submitted to the Court for in camera review and hearing on the determination of privilege.

11. Plaintiff's counsel have advised Defendant's counsel of the receipt of the media card, and requested that Defendant agree to follow the procedure outlined in paragraph 10, above, to arrange for the distribution of the card contents and the protection of documents, if any, contained therein for which the Defendant may assert a privilege. Defendant's counsel have indicated that they do not agree with Plaintiff's proposed process.

WHEREFORE, based on the above and foregoing, Plaintiff respectfully requests an Order from the Court that:

(a) Within 5 days of the Court's Order, Robert Cintron, Esq. will provide one set of the Bates-stamped documents to Defendant for review and for preparation of a privilege log identifying by Bates number and describing the media card documents which Defendant contends are privileged and identifying the privilege which Defendant contends attach to each document;

(b) Attorney Robert Cintron will retain the other two sets of documents and the media card under seal pending receipt of Defendant's privilege log;

(c) Defendant shall submit its privilege log for the card documents to the Court, to Robert Cintron, Esq. and to Plaintiffs' counsel within 20 days of receipt of the documents;

(d) Upon receipt of Defendant's privilege log, Mr. Cintron will release all non-privileged documents to Plaintiff; and

(e) Any dispute(s) as to the disposition of the documents on the privilege log are to be submitted to the Court for in camera review and hearing on the determination of privilege.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on the 15th day of May, 2008, a true copy of the above and foregoing was faxed and mailed to:

**Alan Rosenthal, Esq.**
ADORNO & YOSS LLP
2525 Ponce de Leon Blvd., Suite 400
Coral Gables, Florida 33134

(305) 460-1422

Attorneys for Defendant

And faxed to:

**Robert Cintron, Esq.**
317 Whitehead Street
Key West, Florida 33010
(305) 296-4331

Robert E. Weisberg, Esq.
Florida Bar No. 285676
**LAW OFFICES OF ROBERT E. WEISBERG**
1450 Madruga Avenue, Suite 302
Coral Gables, Florida  33146
reweisberg@aol.com
305- 666-6095
305-666-6296  [fax]

and

Jose F. Torres, Esq.
Florida Bar No. 148067
jftorres3121@mindspring.com
**LAW OFFICES OF CAMPBELL & MALAFY**
2655 LeJeune Road, Suite 201
Coral Gables, FL 331434
305-447-8580
305-446-8383 [fax]

Attorneys for Plaintiff

Subj:     **JDH Notice of Receipt of Documents**
Date:     5/15/2008 1:32:18 P.M. Eastern Standard Time
From:     torreslaw@mac.com
To:       reweisberg@aol.com


Mercy,

Could you prepare FEDEX envelopes to the Court in Key West, to
Rosenthal, and to Cintron.

# 7

IN THE CIRCUIT COURT OF THE
SIXTEENTH JUDICIAL CIRCUIT IN AND
FOR MONROE COUNTY, FLORIDA

CIVIL DIVISION

Case No. 2008-CA-225-K

JOHN DOLAN-HEITLINGER,

     Plaintiff,

vs.

KEYS FEDERAL CREDIT UNION,

     Defendant.

_____/

## DEFENDANT'S MOTION FOR SANCTIONS, MOTION TO STRIKE PLAINTIFF'S PLEADINGS FOR MISCONDUCT AND BAD FAITH, AND MOTION TO COMPEL RETURN OF UNLAWFULLY OBTAINED DOCUMENTS[1]

Defendant, Keys Federal Credit Union ("Keys Federal"), pursuant to Florida Rule of

Civil Procedure 1.380(b) and the Court's inherent authority, requests the Court to enter an Order

imposing sanctions against Plaintiff, John Dolan-Heitlinger ("Dolan-Heitlinger"), including but

not limited to, the striking of his pleadings as a result of egregious misconduct and bad faith in

connection with Dolan-Heitlinger's (1) acceptance and review of stolen work-product and

privileged information belonging to Keys Federal in connection with this litigation, and (2)

intentional destruction of evidence, and states:

    1.    Dolan-Heitlinger sued Keys Federal for breach of contract to recover financial

benefits under an Employment Agreement and a Deferred Compensation Plan resulting from the

termination of his employment by Keys Federal on November 9, 2007.

---

[1] This Motion also serves as a response in opposition to Plaintiff's Notice of Receipt of Materials From Third Party and Motion for Court Order Setting Forth Procedure for Examination of The Materials ("Notice of Receipt of Materials"), a copy of which is attached as Exhibit 1.

Received by Monroe County Clerk's Office
5/22/08

2.     Keys Federal alleges that it lawfully terminated Dolan-Heitlinger's employment "for cause" as a result of various unlawful and otherwise inappropriate activities by Dolan-Heitlinger during his term as Keys Federal's president and chief executive officer. *See* Answer and Affirmative Defenses at pp. 4-6.

3.     Dolan-Heitlinger continues his contemptuous conduct by recently admitting to accepting stolen proprietary and work product materials belonging to Keys Federal relating to his termination *knowing* that the materials were unlawfully obtained or delivered without Keys Federal's permission.

4.     As admitted in his Notice of Receipt of Materials, on May 8, 2008, Dolan-Heitlinger voluntarily accepted and reviewed the contents of a "digital media card" that was delivered to him by a "former" member of Keys Federal's Supervisory Committee which was responsible for overseeing Keys Federal's investigation into Dolan-Heitlinger's unlawful activities. *See* Notice of Receipt of Materials at ¶2. According to Dolan-Heitlinger, the digital media card contained "documents from, by, or relating to Defendant and/or Plaintiff's employment with Defendant." *See id.* at ¶4.

5.     Dolan-Heitlinger admits that the digital media card and its confidential documents were not "inadvertently forwarded" to him, but were, in fact, intentionally delivered. *See id.* at ¶4. Indeed, as a more than 16-year employee of Keys Federal, Dolan-Heitlinger knew at the time he accepted and reviewed the confidential materials that the former member had a continuing duty of confidentiality to Keys Federal, that the member was not authorized to disclose Keys Federal documents to Dolan-Heitlinger, and that reviewing the materials would be a violation of federal regulations.

6.     Dolan-Heitlinger intentionally opened and reviewed the confidential and work product materials.

7.     When Dolan-Heitlinger's counsel informed undersigned counsel of Dolan-Heitlinger's receipt and use of the confidential materials, Keys Federal demanded the return of the digital media card and warned him that any possession of those documents would be an unlawful conversion of Keys Federal's property. Keys Federal also demanded that Dolan-Heitlinger, its counsel, and any other person who may have printed or obtained documents from the device to destroy the documents and any images that may have been obtained from it. A copy of the May 15, 2008 correspondence to Dolan-Heitlinger's counsel is attached as Exhibit 2.

8.     Dolan-Heitlinger and his counsel refuse to return the digital media card.

9.     Instead, and over the objection of Keys Federal, Dolan-Heitlinger's counsel delivered the documents to another attorney, Robert Citron, Esquire,[2] with instructions for him to "prepare three sets of Bates stamped hard copies of the documents." *See* Notice of Receipt of Materials at ¶¶9-10. In complete disregard for the discovery process and his ethical duties, Dolan-Heitlinger's counsel is now requesting that "all non-privileged documents" contained within the stolen documents be released to Dolan-Heitlinger, that Keys Federal prepare a privilege log of the confidential documents, and that this Court review those documents *in camera* if a dispute arises as to their confidentiality. *See id.* at ¶10(d).

10.     Dolan-Heitlinger should not be allowed to profit from his own intentional misconduct and continue with the prosecution of his action against Keys Federal. Notwithstanding counsel's feigned attempt to remedy Dolan-Heitlinger's misconduct, the

---

[2] There is a potential conflict of interest and other possible violations of Florida Bar Rules in delivering the confidential documents to Robert Cintron because his law firm, Morgan and Hendrick, PA, has represented Keys Federal and that attorney-client relationship has not terminated.

ADORNO & YOSS LLP

2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

prejudice to Keys Federal is irreparable and cannot be undone. Dolan-Heitlinger has already reviewed critical and sensitive work product documents that go to the heart of this litigation and Keys Federal's defense. The only form of sanction to adequately redress Dolan-Heitlinger's flagrant misconduct and resulting irreparable prejudice suffered by Keys Federal is to strike Dolan-Heitlinger's pleadings.

11.     It is well-settled law "that a party who has been guilty of fraud or misconduct in the prosecution or defense of a civil proceeding should not be permitted to continue to employ the very institution it has subverted to achieve her ends." *Metropolitan Dade County v. Martinsen*, 736 So. 2d 794 (Fla. 3d DCA 1999) (citations omitted). The Court has the "inherent power . . . to perform efficiently its judicial functions, to protect its dignity, independence and integrity necessarily includes the authority to impose appropriate sanctions. *Tramel v. Bass*, 672 So. 2d 78 (Fla. 1st DCA 1996) (citations omitted).  As the Florida Supreme Court held:

> [T]he striking of pleadings and entering a default ... is the most severe of all sanctions which should be employed only in extreme circumstances. A deliberate and contumacious disregard of the court's authority will justify application of this severest of sanctions, as will bad faith, willful disregard or gross indifference to an order of the court, or conduct which evinces deliberate callousness.

*Mercer v. Raine*, 443 So. 2d 944, 946 (Fla. 1983).

12.     Here, the evidence establishes not only "deliberate callousness" by Dolan-Heitlinger, but flagrant misconduct and the wilfull disregard for the integrity of the very same judicial process that he pursues to achieve his own ends.  His pleadings must be stricken. *See Metropolitan Dade County*, 736 So. 2d 794.

13.     In addition to this contemptuous conduct, Keys Federal has recently learned that Dolan-Heitlinger has intentionally destroyed key evidence in connection with this litigation.

14.     In an effort to retrieve evidence in connection with this litigation, Keys Federal retained the services of Robert D. Moody, JD, CISA, CISM ("Moody"), a forensic expert specializing in the gathering of technological informational data. *See* Moody Aff. at ¶¶1, 2.[3]   In reviewing one of Keys Federal's computers that was relinquished by Dolan-Heitlinger and which was in Dolan-Heitlinger's exclusive use and control during his employment at Keys Federal, Moody determined that "file scrubbing software" was installed on Dolan-Heitlinger's computers and that that it destroyed approximately 5600 files, including internet communications and emails. *See id.* at ¶4.

15.     The majority of the scrubbed files were created during the three months before Dolan-Heitlinger's termination. *See id.* at ¶4.  It is during this time that Dolan-Heitlinger knew he was under investigation by Keys Federal's Board of Directors. *See* Complaint at ¶¶20-24.

16.     Scrubbing software was also found in a second computer that was in Dolan-Heitlinger's exclusive use and control during his employment. *See* Moody Aff. at ¶5. Approximately 2800 files belonging to Keys Federal were also scrubbed and destroyed. *See id.*

17.     After further investigation, Keys Federal found the unlawful scrubbing software in a third computer issued to Todd German ("German"), a former Keys Federal Director of Human Resources who was terminated by Keys Federal following allegations of sexual harassment. *See id.* at ¶9.  One of the bases for Dolan-Heitlinger's termination was that Dolan-Heitlinger mishandled the German sexual harassment claim by, among other things, failing to conduct a full investigation or to interview the harassment complainant, and that Dolan-Heitlinger actively concealed the German sexual harassment claim from the Keys Federal Board of Directors. *See* Answer and Affirmative Defenses at p. 5.

---

[3] "Moody Aff." refers to the Affidavit of Robert D. Moody, JD, CISA, CISM, a copy of which is attached as Exhibit 3.

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

18.     Dolan-Heitlinger purchased the software using a Keys Federal corporate credit card, and installed and used the software without Keys Federal's knowledge or permission.

19.     The scrubbing software programs are neither part of Keys Federal's software inventory, nor part of the standard Microsoft package included in computers. Moody Aff. at ¶¶6-7.  Rather, they are third-party products that are specifically used to deliberately overwrite the contents of individual files or groups of files, and are designed to search, edit and delete information in the registry hive. *See id.*

20.     The evidence leaves no doubt that Dolan-Heitlinger purchased and installed the scrubbing software with the intent to destroy key evidence supporting Keys Federal's termination of his employment.

21.     Dolan-Heitlinger's intentional destruction of key evidence severely prejudices Keys Federal's defense, obstructs the ends of justice, and undermines the integrity of the legal system. Such fraudulent conduct, alone, warrants sanctions and the striking of Dolan-Heitlinger's pleadings. *See Golden Yachts, Inc. v. Hall,* 920 So. 2d 777, 780 (Fla. 4th DCA 2006) ("In cases involving intentional spoliation, courts more often strike pleadings or enter default judgments.").

22.     This Court should impose severe sanctions against Dolan-Heitlinger, including, but not limited to:

- ordering that he immediately return the digital media card;

- ordering that he destroy all documents and images printed from the device;

- striking his pleadings;

- imposing attorneys' fees and costs; and

- any other relief the Court deems just and proper.

WHEREFORE, Defendant, Keys Federal Credit Union, requests the Court to enter an Order of sanctions against Plaintiff, John Dolan-Heitlinger, including but not limited to, striking his pleadings, awarding Defendant its attorneys' fees and costs, and granting any other relief the Court deems just and proper.

Alan Rosenthal
Florida Bar No. 220833
Natalie J. Carlos
Florida Bar No. 0146269
Adorno & Yoss LLP
Attorneys for Defendant
Suite 400
2525 Ponce de Leon Boulevard
Miami, Florida 33134
Telephone: 305-460-1000
Facsimile: 305-460-1422
E-mail: ar@adorno.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and mailed on to Robert E. Weisberg, Esquire, Law Offices of Robert E. Weisberg, 1450 Madruga Avenue, Suite 302, Coral Gables, Florida 33146; and Jose F. Torres, Esquire, Law Offices of Campbell & Malafy, 2655 LeJeune Road, Suite 201, Coral Gables, Florida 33134 on May 21, 2008.



7

ADORNO & YOSS LLP
2525 PONCE DE LEON BLVD. • SUITE 400 • MIAMI, FLORIDA 33134 • TELEPHONE 305-460-1000 • TELEFAX 305-460-1422

IN THE CIRCUIT COURT OF THE
SIXTEENTH JUDICIAL CIRCUIT,
IN AND FOR MONROE COUNTY,
FLORIDA

JOHN DOLAN-HEITLINGER,

     Plaintiff.

CASE NO. 2008-CA-225·K

v.

KEYS FEDERAL CREDIT UNION,

     Defendant.

_____/

## NOTICE OF RECEIPT OF MATERIALS FROM THIRD PARTY AND MOTION FOR COURT ORDER SETTING FORTH PROCEDURE FOR EXAMINATION OF THE MATERIALS

PLAINTIFF, JOHN DOLAN-HEITLINGER, by and through undersigned counsel, and pursuant to the applicable Florida Rules of Civil Procedure, file this Notice of Receipt of Materials from Third Party and move this Court for an Order setting forth a procedure for examination of the materials, and in support thereof states:

1.   In this action, Plaintiff JOHN DOLAN-HEITLINGER, the former President and Chief Executive Officer of Defendant KEYS FEDERAL CREDIT UNION ("KFCU"), alleges that KFCU breached the Employment Agreement between the parties when KFCU terminated his employment without cause but failed to pay him the severance payment provided in the Employment Agreement.   Plaintiff also alleges that KFCU unlawfully breached his Deferred Compensation Plan Agreement with KFCU when failed to pay him the sums due him under the provisions of the Deferred Compensation Plan Agreement upon his not for cause termination.   Defendant contends that Plaintiff's termination was "for cause" and that it did not breach the Employment Agreement or the Deferred Compensation Plan Agreement.



**EXHIBIT**

**1**

MAY-15-2008 17:21 From:                   To:36⌐4601422          P.3

2.   On the afternoon of Thursday, May 8, 2008, a former member of Defendant's volunteer Supervisory Committee handed Plaintiff a digital media card.

3.   Plaintiff did not solicit the card.

4.   Plaintiff opened the digital media card to ascertain the contents thereof and determined that the digital media card contained documents from, by, or relating to Defendant and/or Plaintiff's employment with Defendant.

5.   Upon ascertaining the general nature of the documents in the digital media card, Plaintiff notified his attorney on the evening of May 8, 2008 that he had received the card and requested advice on the proper handling of the card.

6.   On Friday, May 9, 2008, Plaintiff's attorneys, after reviewing the applicable Rules of Professional Conduct of the Florida Bar and the Bar's applicable Opinion letters, consulted the "ethics hot line" of the Florida Bar for advice regarding the handling of the card and its contents.

7.   Florida Rule of Civil Procedure 4-4.4(b) provides that "[a] lawyer who receives a document relating to the representation of the lawyer's client and knows or reasonably should know that the document was inadvertently sent shall promptly notify the sender."

8.   Inasmuch as the digital media card was not inadvertently forwarded to Plaintiff or obtained through wrongdoing, the Rules of Professional Conduct do not squarely apply to the situation at hand. As Plaintiff's attorneys have neither seen nor reviewed the contents of the digital media card, they are unable to describe, characterize, or identify the contents of the digital media card. Plaintiff's attorneys acknowledge the possibility that the digital media card may contain one or more documents which Defendant may consider privileged.

9.   Plaintiff's counsel have retained Robert Cintron, Esq.,
of the Law Offices of Hugh J. Morgan, 317 Whitehead Street,
Key West, Florida, for the purpose of retaining physical
possession of the digital media card and its contents
pending the Court's ruling on the privileged nature, if any,
of documents in the digital media card.  The digital media
card has been delivered to Mr. Cintron at his office. Mr.
Cintron has agreed to prepare three sets of Bates stamped
hard copies of the documents in the digital media card.

10.   In order to identify the contents of the card, while
protecting the integrity of the discovery process and the
contents of any confidential or otherwise privileged
documents, Plaintiff proposes the following procedure and
respectfully requests an Order from the Court authorizing
the following process:

(a)   Within five (5) days of the date of the Court's Order,
Mr. Cintron will provide one set of the Bates-stamped
documents to Defendant for review and for preparation of a
privilege log identifying by Bates number and describing the
media card documents which Defendant contends are privileged
and identifying the privilege which Defendant contends
attach to each document;

(b)   Mr. Cintron will retain the other two sets of documents
and the media card under seal pending receipt of Defendant's
privilege log; .

(c)   Defendant shall submit its privilege log for the card
documents to the Court, to Robert Cintron, Esq., and to
Plaintiffs' counsel within 20 days of receipt of the
documents;

(d)   Upon receipt of Defendant's privilege log, Mr. Cintron
will release all non-privileged documents to Plaintiff; and

(e) Any dispute(s) as to the disposition of the documents on the privilege log are to be submitted to the Court for in camera review and hearing on the determination of privilege.

11.  Plaintiff's counsel have advised Defendant's counsel of the receipt of the media card, and requested that Defendant agree to follow the procedure outlined in paragraph 10, above, to arrange for the distribution of the card contents and the protection of documents, if any, contained therein for which the Defendant may assert a privilege. Defendant's counsel have indicated that they do not agree with Plaintiff's proposed process.

WHEREFORE, based on the above and foregoing, Plaintiff respectfully requests an Order from the Court that:

(a)  Within 5 days of the Court's Order, Robert Cintron, Esq. will provide one set of the Bates-stamped documents to Defendant for review and for preparation of a privilege log identifying by Bates number and describing the media card documents which Defendant contends are privileged and identifying the privilege which Defendant contends attach to each document;

(b)  Attorney Robert Cintron will retain the other two sets of documents and the media card under seal pending receipt of Defendant's privilege log;

(c)  Defendant shall submit its privilege log for the card documents to the Court, to Robert Cintron, Esq. and to Plaintiffs' counsel within 20 days of receipt of the documents;

(d)  Upon receipt of Defendant's privilege log, Mr. Cintron will release all non-privileged documents to Plaintiff; and

(e) Any dispute(s) as to the disposition of the documents on the privilege log are to be submitted to the Court for in camera review and hearing on the determination of privilege.

## CERTIFICATE OF SERVICE

WE HEREBY CERTIFY that on the ~~14th~~ 15th day of May, 2008, a true copy of the above and foregoing was faxed and mailed to:

**Alan Rosenthal, Esq.**
ADORNO & YOSS LLP
2525 Ponce de Leon Blvd., Suite 400
Coral Gables, Florida 33134

(305) 460-1422

Attorneys for Defendant
And faxed to:

**Robert Cintron, Esq.**
317 Whitehead Street
Key West, Florida 33010
(305) 296-4331

Robert E. Weisberg, Esq.
Florida Bar No. 285676
LAW OFFICES OF ROBERT E. WEISBERG
1450 Madruga Avenue, Suite 302
Coral Gables, Florida  33146
reweisberg@aol.com
305- 666-6095
305-666-6296  [fax]

and

Jose F. Torres, Esq.
Florida Bar No. 148067
jftorres3121@mindspring.com
LAW OFFICES OF CAMPBELL & MALAFY
2655 LeJeune Road, Suite 201
Coral Gables, FL 331434
305·447-8580
305-446-8383 [fax]

Attorneys for Plaintiff

## ADORNO & YOSS

A LIMITED LIABILITY PARTNERSHIP
2525 PONCE DE LEON BOULEVARD, SUITE 400
MIAMI, FLORIDA 33134-6012
PHONE: (305) 460-1000, FAX: (305) 460-1422
WWW.ADORNO.COM

ALAN ROSENTHAL

DIRECT LINE: (305) 460-1297
EMAIL: AR@ADORNO.COM

May 15, 2008

Jose F. Torres, Esquire
Campbell & Malafy
Suite 201
2655 S. Le Jeune Road
Coral Gables, Florida 331345837

Re:     John Dolan-Heitlinger v. Keys Federal Credit Union
        Case No. 042008-CA-225-K-03005 CA 13
        Sixteenth Judicial Circuit

Dear Mr. Torres:

This is in response to your May 15, 2008 letter. Be advised that the contents of the digital media card constitute proprietary information that was unlawfully taken from Keys Federal without authorization.

We demand that you return the media card immediately and that you, your firm, Mr. Heitlinger, and any other person who may have printed or obtained documents from that device destroy the documents and any images that may have been obtained from it. We deem any possession of those documents to be an unlawful conversion of Keys Federal's property.

We also demand that you provide us the name of the alleged "former member" of Keys Federal's Supervisory Committee that gave Mr. Heitlinger the digital media card. That individual has a duty of confidentiality which would have survived his or her tenure on the committee. Keys Federal has a fiduciary duty to its members to investigate and seek redress for this unlawful taking and it will do so to the fullest extent permitted by law. Moreover, we believe that you have an ethical obligation to return the card and copies made therefrom and to identify the perpetrator who unlawfully obtained or delivered Keys Federal's property.

Sincerely yours,

Alan Rosenthal

cc:   Keys Federal Credit Union
      Robert Weisberg, Esquire
      Robert Cintron, Esquire

**EXHIBIT**

**2**

CALIFORNIA     FLORIDA     GEORGIA     ILLINOIS          EY     NEW YORK     TEXAS     WASHINGTON, D.C.

IN THE CIRCUIT COURT OF THE
SIXTEENTH JUDICIAL CIRCUIT IN AND
FOR MONROE COUNTY, FLORIDA

CIVIL DIVISION

Case No. 2008-CA-225-K

JOHN DOLAN-HEITLINGER,

     Plaintiff,

vs.

KEYS FEDERAL CREDIT UNION,

     Defendant.

_____/

## AFFIDAVIT OF ROBERT D. MOODY, JD, CISA, CISM

STATE OF FLORIDA     )

MIAMI-DADE COUNTY   )

     BEFORE ME, the undersigned authority, personally appeared Robert D. Moody, JD, CISA, CISM, who, being first duly sworn, deposes and states:

     1.     I am a Partner in charge of the Forensic Technology practice at Berenfeld, Spritzer, Shechter & Sheer. I am certified in the areas of information systems auditing, technology security, and computer forensics.

     2.     I was retained by the law firm of Adono & Yoss LLP to provide consulting services to Defendant, Keys Federal Credit Union ("Keys Federal"), to address issues relating to possible data loss, unauthorized communications, and threats to data security in its computers by its former employee, Plaintiff, John Dolan-Heitlinger ("Dolan-Heitlinger").

1

**EXHIBIT**

**3**

3.     I began my analysis by reviewing two computers that were, according to Keys Federal, relinquished by Dolan-Heitlinger and which were in Dolan-Heitlinger's exclusive use and control during his employment at Keys Federal.

4.     In my analysis of one of the computers, I determined that the scrubbing software was installed on that computer's hard drive that destroyed approximately 5600 files. The majority of the scrubbed files were created between August 2007 and October 2007.  More than 2000 of those files represent internet communications, emails and documents.

5.     I also found file scrubbing software in my analysis of Dolan-Heitlinger's second computer. Approximately 2800 files were scrubbed and destroyed, the majority of which were created between April 2007 and May 2007.

6.     A file scrubbing software program known as "CyberScrub" was found. CyberScrub is a third-party product which is not part of the standard Microsoft package included in computers and is specifically used to deliberately overwrite the contents of individual files or groups of files.

7.     A second software program was found, known as "Registry Detective." Registry Detective is a third-party product which is also not part of the standard Microsoft package included in computers, and is specifically designed to search, edit and delete information in the registry hive.

8.     Neither of the two software programs found are part of Keys Federal's normal software inventory.

9.     I was able to find the scrubbing software on only three of Keys Federal's computers: the two computers issued to Dolan-Heitlinger and one computer issued to Todd German, a former Keys Federal Director of Human Resources. According to Keys Federal, the

circumstances of German's termination of employment is related to Dolan-Heitlinger's termination of employment and this litigation.

10.    Based on my experience in similar employment-related matters, the nature of the scrubbing software involved and the steps necessary to identify and scrub the computer files, it is my opinion that Dolan-Heitlinger intentionally scrubbed the computer files on both of his computers.

_____
Robert D. Moody, JD, CISA, CISM,

SWORN TO AND SUBSCRIBED before me this May 31, 2008.

_____
Signature of Notary Public
State of Florida

_____
Print, type or Stamp Commissioned
Name of Notary Public

**Helen Doherty**
Commission # DD484736
Expires February 21 2010
Bonded Thru Fram Insurance Inc 800-432-1016

3